# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 16-41471
Summary Calendar

United States Court of Appeals
Fifth Circuit

**FILED**

April 27, 2017

Lyle W. Cayce
Clerk

SYLVIA FUENTES, Individually and representative of the Estate of Sammuel Toomey; JONATHON TOOMEY; HANNAH TOOMEY; EVERETT TOOMEY; JOSHUA TOOMEY,

      Plaintiffs - Appellants

v.

NUECES COUNTY, TEXAS,

      Defendant - Appellee

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 2:15-CV-327

Before KING, DENNIS, and COSTA, Circuit Judges.

PER CURIAM:*

After Sammuel Toomey committed suicide during his detention in the Nueces County Jail, his wife and children, individually and as representatives of his estate, sued Nueces County seeking relief under 42 U.S.C. § 1983. The district court granted summary judgment for Nueces County because the

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 16-41471

plaintiffs had failed to establish any official county policy that was the moving force behind any violation of Toomey's constitutional rights.  We AFFIRM.

## I.  FACTS AND PROCEEDINGS

Sammuel Toomey was arrested by Corpus Christi police officers on September 14, 2014, following an altercation with his neighbor that culminated in Toomey allegedly shooting and killing three individuals. Toomey was booked into the Nueces County Jail the following day.  During his intake processing, Toomey stated that he intended to kill himself.  Accordingly, he was placed on suicide watch, which required a jail guard to check on Toomey in his cell at regular 30-minute intervals, but did not mandate that Toomey wear the suicide smock required of higher risk inmates.  For the duration of his detention, Toomey was checked approximately every 30 minutes with the exception of when he was outside of his cell.

At approximately 6:30 p.m. on September 18, Toomey was moved from an isolation holding cell to a cell in the 4P unit of the jail.  Officer Erasmus Gomez was the guard assigned to the 4P unit at the time Toomey was moved there.  At 9:53 p.m., Toomey was taken to the medical department for an evaluation; he was returned to his cell at 10:10 p.m.  Gomez's last check of Toomey occurred at 11:00 p.m., during which he observed Toomey lying on his side on his bunk without pants on.  Officer Aldo Garza came on duty at 11:00 p.m. to replace Gomez in the 4P unit.  Pursuant to jail policy on shift changes, Gomez and Garza together completed a roll call of all inmates in the 4P unit between 11:09 and 11:20 p.m.  During roll call, Garza observed Toomey lying on his stomach appearing to be asleep and to be breathing.  However, Garza did not check Toomey's arm band or observe his face, which Garza later admitted was a violation of jail policy.  Garza returned to Toomey's cell at 11:30 p.m. to release Toomey for his daily allotted hour outside his cell.  Garza found Toomey in a different position than that he had been in during roll call;

2

No. 16-41471

Toomey had his pants tied around his neck and was unresponsive. Jail guards and medical staff attempted to revive Toomey, after which he was transported to a hospital and pronounced dead at 12:19 a.m. on September 19. The cause of death was later determined to be mechanical asphyxiation. The Nueces County Sheriff's Office subsequently conducted an internal investigation into Toomey's suicide and found that "no violations of customs, regulations, or policies . . . contributed to [Toomey's] death."

Toomey's wife and children, individually and as representatives of his estate (collectively, the Toomey Estate), filed suit against Nueces County[1] under 42 U.S.C. § 1983 on July 31, 2015, for damages relating to Toomey's death.[2] Its amended complaint alleged that Nueces County was liable for the constitutional violations committed by its officers because the officers' actions were undertaken pursuant to Nueces County's customs, policies, and procedures.[3] Nueces County moved for summary judgment, which the district court granted on the basis that the Toomey Estate had failed satisfy the requirements for municipal liability established in *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978). The Toomey Estate timely appeals.

---

[1] The Toomey Estate later moved to amend its complaint to name two Nueces County sheriff's deputies as defendants. The district court denied this motion, and the Toomey Estate does not appeal this order.

[2] The Toomey Estate also named as defendants five John and Jane Doe Nueces County Sheriff's Department officers, the City of Corpus Christi, two named Corpus Christi police officers, and five John and Jane Doe Corpus Christi police officers. The Toomey Estate later dismissed its claims against Corpus Christi and its police officers pursuant to a settlement agreement. And after the district court granted summary judgment, the Toomey Estate moved to dismiss the five John and Jane Doe Nueces County Sheriff's Department officers, which the district court granted. Accordingly, the only remaining defendant is Nueces County.

[3] The amended complaint also raised claims of failure to train and deliberate indifference against Nueces County, but the Toomey Estate's arguments on appeal are limited to those stemming from Nueces County customs, policies, and procedures.

No. 16-41471

## II. MUNICIPAL LIABILITY

We review a district court's grant of summary judgment *de novo*, applying the same standard as the district court. *Rogers v. Bromac Title Servs., L.L.C.*, 755 F.3d 347, 350 (5th Cir. 2014). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In making this determination, we view the evidence in the light most favorable to the nonmoving party. *Rogers*, 755 F.3d at 350.

The Toomey Estate argues on appeal that Nueces County is liable for the misconduct of its employees in violating Toomey's constitutional rights. A municipality, such as Nueces County, is subject to suit under § 1983 "only for acts directly attributable to it 'through some official action or imprimatur.'" *Valle v. City of Hous.*, 613 F.3d 536, 541 (5th Cir. 2010) (quoting *Piotrowski v. City of Hous.*, 237 F.3d 567, 578 (5th Cir. 2001)); *see Monell*, 436 U.S. at 691 ("[T]he language of § 1983 . . . compels the conclusion that Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort."). Accordingly, to establish municipal liability under § 1983, a plaintiff must prove three elements: "(1) an official policy (or custom), of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose 'moving force' is that policy or custom." *Valle*, 613 F.3d at 541–42 (quoting *Pineda v. City of Hous.*, 291 F.3d 325, 328 (5th Cir. 2002)). The first prong, an official policy or custom, can be proved in two ways. "First, a plaintiff may point to a policy statement formally announced by an official policymaker." *Zarnow v. City of Wichita Falls*, 614 F.3d 161, 168 (5th Cir. 2010). Alternatively, a plaintiff can offer evidence of a "persistent widespread practice of [county] officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to

4

constitute a custom that fairly represents municipal policy." *Id.* at 169 (quoting *Webster v. City of Hous.*, 745 F.2d 838, 841 (5th Cir. 1984) (en banc)); *see also id.* ("A customary policy consists of actions that have occurred for so long and with such frequency that the course of conduct demonstrates the governing body's knowledge and acceptance of the disputed conduct."). Such "[a] pattern is tantamount to official policy." *Peterson v. City of Fort Worth*, 588 F.3d 838, 850 (5th Cir. 2009). The Toomey Estate relies on this second method.

The district court terminated its analysis at the first prong of the municipal liability analysis, concluding that the Toomey Estate failed to show a persistent, widespread custom or practice of unconstitutional conduct by Nueces County employees. The Toomey Estate challenges this conclusion on appeal, arguing that it demonstrated a custom by Nueces County officials "to encourage the use of lackadaisical procedures when supervising inmates and creating a situation of inability for officers to complete what they must to ensure the protection and safety of inmates in their care." In support of this assertion, the Toomey Estate relies upon, as it did in the district court, three prior inmate suicides in the Nueces County Jail occurring in 1995, 1999, and 2008.

When a plaintiff relies on prior incidents to prove a county policy, the prior incidents "must have occurred for so long or so frequently that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice of [county] employees." *Peterson*, 588 F.3d at 850 (quoting *Webster*, 735 F.2d at 842). In other words, "a plaintiff must demonstrate 'a pattern of abuses that transcends the error made in a single case.'" *Id.* at 850–51 (quoting *Piotrowski*, 237 F.3d at 582 (citations omitted)). "A pattern requires similarity and specificity; '[p]rior indications cannot simply be for any and all bad or unwise acts, but

rather must point to the specific violation in question.'" *Id.* at 851 (alteration in original) (quoting *Estate of Davis ex rel. McCully v. City of North Richland Hills*, 406 F.3d 375, 383 (5th Cir. 2005)).   In addition to similarity and specificity, a pattern must be comprised of "sufficiently numerous prior incidents" rather than merely "isolated instances." *McConney v. City of Hous.*, 863 F.2d 1180, 1184 (5th Cir. 1989).

The three prior incidents that the Toomey Estate relies upon fail to satisfy these requirements for a pattern.  First, these incidents lack similarity to the specific violation in Toomey's case: failure to conduct proper face-to-face observation of an inmate on suicide watch.  On a general level, each of these three incidents did involve a failure on the part of jail staff to follow jail procedures regarding inmate checks.  However, as the district court noted, these incidents materially differ from Toomey's case in whether the inmate was a known suicide risk, the manner in which jail guards deviated from jail procedures, and the extent to which the violators were later disciplined.  Only one of these incidents involved an inmate unequivocally under suicide watch at the time of the suicide.  And all three incidents involved an improper gap between inmate checks by the guards, whereas there was no gap in Toomey's checks.  These incidents thus lack the type of specific similarity to the violation in Toomey's case that is required to demonstrate a pattern.

Further, the district court did not err in concluding that four incidents of inmate suicide—lacking in common characteristics—over a 20-year span were not sufficiently numerous to constitute a pattern.  Although there is no rigid rule regarding numerosity, we have previously held that 27 prior incidents of excessive force over a three-year period, *Peterson*, 588 F.3d at 850–52, and 11 incidents offering "equivocal evidence" of unconstitutional searches over a three-year period, *Pineda*, 291 F.3d at 329, were not sufficiently numerous to constitute a pattern.  The Toomey Estate also fails to offer any

evidence showing that four inmate suicides in a 20-year span is a high rate compared to other jails of similar size. *Cf. Hinojosa v. Butler*, 547 F.3d 285, 296 (5th Cir. 2008) (concluding that data provided by plaintiff to show a pattern of police misconduct "beg more questions than they answer," including whether the number of complaints filed against San Antonio police "is high relative to other metropolitan police departments"). Contrary to an ongoing pattern of misconduct, the record indicates, as the district court noted, an increasing effort on the part of Nueces County to ensure inmate checks are performed properly. For instance, in the years preceding Toomey's suicide, the Nueces County Jail installed an electronic wand system that tracked whether and when guards conducted checks of each inmate's cell, and this system was properly utilized during Toomey's detention. In short, the three prior incidents of inmate suicide upon which the Toomey Estate relies, while certainly tragic, are neither sufficiently similar nor sufficiently numerous to constitute a widespread and persistent practice of Nueces County.[4]

As an alternative to showing a pattern, the Toomey Estate cites *Grandstaff v. City of Borger*, 767 F.2d 161 (5th Cir. 1985), for the assertion that a single violation can constitute the basis for finding an official custom or policy when there is a failure to discipline those involved in the violation. They claim that because Nueces County failed to find a policy violation that contributed to Toomey's suicide, to discipline any guards, or to change its policies in the wake of the incident, it has ratified the guards' violations of Toomey's rights. In

---

[4] The Toomey Estate also relies on its allegation that the Nueces County Jail consistently maintained a 72:1 inmate to guard ratio, in excess of the 48:1 maximum ratio set by the Texas Jail Standards. *See* 37 Tex. Admin. Code § 275.4. In support of its allegation that this was a longstanding practice, the Toomey Estate points only to anecdotal deposition testimony given in 2001 relating to an incident that occurred in 1995. Thus for the same reasons as the three prior incidents of inmate suicide, this ratio evidence also fails to meet the requirements to demonstrate a pattern.

*Grandstaff*, six City of Borger police officers (the entire night shift of the City's police department) were in pursuit of someone suspected of a minor traffic violation. *Id.* at 165. During their pursuit, the officers mistook an innocent bystander, who was driving a slow-moving truck, for the suspect and "poured their gunfire at the truck" "without awaiting any hostile act or sound," ultimately killing the bystander. *Id.* at 165, 168. We upheld the jury's finding that the City of Borger was liable even though there was no evidence of prior similar incidents by its police force, because the conduct of both the officers during the incident and the City policymakers in the wake of the incident (including not disciplining or discharging any of the involved officers) was sufficient to infer ratification by City policymakers of the officers' reckless disregard for human life and a de facto policy of such. *Id.* at 171–72. We explained that the policymakers' failure to react "to so gross an abuse of the use of deadly weapons" was sufficient to show an official policy of condoning such abuses. *Id.* at 171. However, this case is different in kind and degree from the "extreme factual situation[]," *Barkley v. Dillard Dep't Stores, Inc.*, 277 F. App'x 406, 413 (5th Cir. 2008), reflected in *Grandstaff*. Unlike *Grandstaff*, this case does not involve the collective conduct of many individuals and multiple bad acts but rather the failure of one individual to conduct a single inmate check in the proper manner. Nor is the guard's single act of misconduct at issue here as "incompetent and catastrophic [a] performance" as that of the officers in *Grandstaff*, 767 F.2d at 171, "particularly given the absence of evidence suggesting a culture of [misconduct]" at the Nueces County Jail, *Snyder v. Trepagnier*, 142 F.3d 791, 798 (5th Cir. 1998). And the internal investigation's conclusion that no violations contributed to Toomey's death does not mean that Nueces County ratified its officer's violation; it simply indicates that any violation that did occur did not contribute to Toomey's death. *See DeShay v. Bastrop Indep. Sch. Dist.*, 180 F.3d 262, 1999 WL 274606, at \*1

(5th Cir. 1999) (unpublished) (concluding that an investigation's "procedural mistakes . . . do[] not support an inference that the staff acted with dangerous recklessness because they feared no authoritative retribution or recognized that the policymaking authority in fact condoned such recklessness"). Further, the Toomey Estate does not cite evidence in the record indicating that no disciplinary action was taken; it simply cites the portion of the internal investigative report concluding that no violations contributed to Toomey's death. In short, this case does not present the sort of extreme factual situation warranting an inference that Nueces County ratified any violation by its officers.

The Toomey Estate has failed to meet its burden of showing there is a genuine dispute of material fact regarding the first element of municipal liability: an official Nueces County policy or custom. Accordingly, the district court did not err in granting summary judgment against the Toomey Estate's § 1983 claim.

## III. CONCLUSION

The judgment of the district court is AFFIRMED.