# United States Court of Appeals for the Fifth Circuit

—————

No. 22-50289

—————

Jemadari Chinua Williams,

Plaintiff—Appellant,

*versus*

Bexar County; Andrew McDermott; Corporal Jontell Ezell, *SERT Officer, Badge #1537*,

Defendants—Appellees.

United States Court of Appeals
Fifth Circuit

**FILED**

July 8, 2024

Lyle W. Cayce
Clerk

—————————————————————

Appeal from the United States District Court
for the Western District of Texas
USDC No. 5:18-CV-1235

—————————————————————

Before Smith, Engelhardt, and Ramirez, *Circuit Judges*.

Per Curiam:[*]

Jemadari Chinua Williams, a former inmate, sues county jail officials and the county under 42 U.S.C. § 1983 for allegedly violating his civil rights during his incarceration. The district court granted summary judgment in full to all defendants. We AFFIRM.

———————————————

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 22-50289

I

A

On February 13, 2018, Williams was booked into the Bexar County Adult Detention Center (BCADC) in Bexar County, Texas, on a robbery charge. A week later, on February 20, 2018, he was assaulted by a group of inmates. Williams contends the officer on duty, Andrew McDermott, had given them explicit permission to attack him.

Four days later, on February 24, 2018, Williams was assaulted by Corporal Jontell Ezell while recovering in the infirmary. Later that day, Williams called the Prison Rape Elimination Act (PREA) hotline. During his interview, he stated that he had not been sexually assaulted or harassed, but he needed to tell someone that he had been assaulted by inmates on February 20, 2018, and that McDermott had allowed it.

On March 13, 2018, Williams filed a written grievance regarding both assaults. It stated that he was assaulted by six inmates on February 20, 2018, he sustained rib and back injuries, and the duty officer permitted the attack. It also stated that while being treated for his injuries on February 24, 2018, he was assaulted by "Sert Officer 1537", who was later determined to be Ezell. When Williams did not receive a response, he filed another grievance about the assaults on March 19, 2018. It stated that he had filed "multiple grievances regarding this issue since [February 28, 2018]."

No. 22-50289

B

Williams sued McDermott, Ezell, and Bexar County[1] under § 1983, alleging violation of his rights under the Eighth Amendment[2] to the United States Constitution. In an unsworn supplement to his amended complaint, which was also unsworn, Williams alleged that "[t]here exists within the organizational culture of the BCSO a corporate attitude of deliberate indifference"; "one of the ways it's manifested commonly is a practice termed 'greenlighting,' which are instances where deput[i]es consent to inmates 'policing' other inmates by means of physical assault." He also alleged that he had "personally been a victim of this organization[-]wide deliberate indifference on several occasions" during his 10-month confinement in the BCADC. Williams detailed three specific incidents of greenlighting. The first allegedly occurred on February 19, 2018, when another inmate asked for and received permission from a guard to fight Williams. The second occurred the next day, when a group of inmates went to a different guard and explicitly requested, received, and conducted a "'greenlight' to discipline one of their peers." The third incident occurred when Williams was attacked by inmates after McDermott sanctioned the "greenlight" on him for criticizing the other guard about the prior assault. Williams also identified two other examples of "deliberate indifference" at the jail: (1) an unnamed guard's refusal to take any action when Williams was assaulted by his cellmate, and (2) the "recent death" of an inmate classified as a "white supremist" who had been housed

---

[1] Williams initially named the Bexar County Sheriff's Office (BCSO), McDermott, and several other individuals in his original complaint. He then amended the complaint, removing the other individuals and adding "SERT Officer 1537." The district court construed his claim against the BCSO as a claim against Bexar County, terminated the BCSO as a defendant, and substituted Bexar County as a defendant.

[2] Williams also brought a claim for denial of religious practices under the First Amendment, but he does not challenge the district court's ruling as to that claim on appeal.

No. 22-50289

with an African-American inmate "with a history of violent offenses." Williams sought monetary damages in the amount of $2 million.

1.

All three defendants moved for summary judgment on grounds that Williams had failed to exhaust his administrative remedies. Ezell and Bexar County's joint motion included, among other exhibits, an affidavit from the Grievance Sergeant of the BCSO. It stated that Williams first filed a grievance over the alleged assault by Ezell on March 19, 2018;[3] a copy of that grievance was attached.[4] Because the incident was alleged to have taken place on February 24, 2018, the affidavit also affirmed that the grievance had been filed outside of the 72-hour window mandated by the BCADC Inmate Handbook. The affidavit also affirmed that despite the statement in the grievance that Williams had filed multiple grievances about the assault since February 28, 2018, but had not received a response, none of the grievances he filed before March 19, 2018, addressed the assault by Ezell.

Williams filed an unverified response to the joint motion as well as a supplemental memorandum. In it, he claimed that he had filed a grievance regarding Ezell prior to March 19, 2019, and that this information could be used to "impeach" the affidavit of the Grievance Sergeant. He also stated that he submitted two grievances related to the February 20, 2018 assault prior to February 24, 2018, but he never received a response. Williams

───────────────

[3] Although the grievance was dated March 19, *2019*, it indicates that it was received on March 19, *2018*.

[4] A copy of another grievance over Ezell's assault, dated March 13, 2018, was also attached to the affidavit. This grievance appears to have been filed as part of the March 19, 2018 grievance.

4

included a copy of a grievance allegedly submitted on March 13, 2018, which named both McDermott and Ezell.

McDermott additionally moved for summary judgment based on qualified immunity. He proffered an affidavit from Lieutenant Tony Guist (Lieutenant), who attested that Williams made a complaint regarding the February 20 incident via the PREA hotline on February 24, 2018. In response, Williams filed his own motion for summary judgment without making an argument as to why it should be granted.

Finally, Bexar County also moved for summary judgment based on Williams's alleged failure to create a fact dispute as to whether the BCSO had a custom of "greenlighting" inmates. Williams filed a supplemental response, arguing that McDermott's alleged history of misconduct demonstrated that the organizational culture of the BCSO permitted the abuse of inmates. He also included what appeared to be a log of grievances filed by inmates against guards between 2012 and 2018.

2.

The district court found that while Williams had submitted a grievance on March 13 instead of March 19, 2018, he had not filed a grievance against Ezell within 72 hours of the alleged assault as required by the BCADC Inmate Handbook, so he had not exhausted his administrative remedies against her. Additionally, Williams's claims regarding the incident on February 20, 2018, did not implicate Ezell; if they did, the claims were conclusory. The district court granted the motion with respect to Ezell and dismissed her as a defendant.

As for McDermott, the district court found that the PREA complaint was not sufficient to constitute the filing of a grievance, but even if it was, Williams had still failed to file a grievance within the 72-hour window

No. 22-50289

mandated by the BCADC Inmate Handbook.[5] It therefore granted McDermott's motion for summary judgment, denied Williams's motion for summary judgment, and dismissed McDermott as a defendant.

As for Bexar County, the district court found that Williams had not brought forward evidence of a sufficient pattern of similar incidents over a long enough period to establish a custom for the purposes of municipal liability under § 1983. Noting that greenlighting was "defined by Williams as officials consenting to inmates' 'policing' other of inmates by means of physical assault", it held that the entries in the grievance log did not meet this definition. Accordingly, the district court granted Bexar County's motion for summary judgment and dismissed it as a defendant.[6]

Williams timely appealed the district court's summary judgment ruling as well as the denial of his motion for the appointment of counsel.

II

Williams asserts five grounds for appeal. First, he contends that the district court granted Ezell's summary judgment motion prematurely because Ezell had not yet answered his interrogatories. Second, he argues that the district court erred in granting summary judgment for Bexar County based on his failure to establish a custom or policy of greenlighting because it focused too narrowly on that specific custom; his initial complaint of

---

[5] The district court stated that the alleged greenlight by McDermott and subsequent assault occurred on February 18, 2018. Williams, however, alleges the incident took place on February 20, 2018.

[6] In response to a subsequent motion to alter the judgment, the district court clarified that it "did not base its decision to grant summary judgment in favor of Bexar County on the fact that Williams's pleadings were unverified and [it] specifically found Williams alleged an insufficient number of like incidents to establish a pattern whether his pleadings were verified or not."

deliberate indifference included other types of misconduct, such as use of excessive force, failure to intervene in violent incidents, and sanctioning or inciting inmate-on-inmate violence. Third, Williams contends that the district court erred by granting summary judgment for Ezell and McDermott based on his failure to exhaust administrative remedies because he attempted to file a grievance but was prevented from doing so. Fourth, he argues that he was not provided with adequate notice regarding the defendants' summary judgment motions. Finally, Williams contends that the district court erred by denying his motion for the appointment of counsel.

## III

This court reviews "the grant of summary judgment de novo, applying the same standards as the district court." *Dillon v. Rogers*, 596 F.3d 260, 266 (5th Cir. 2010) (internal quotations and citation omitted). In general, summary judgment is appropriate if the record discloses "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A factual issue is "material" if its resolution would affect the outcome of the suit under the applicable law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* All facts and inferences are construed in the light most favorable to the nonmoving party. *Poole v. City of Shreveport*, 691 F.3d 624, 627 (5th Cir. 2012). Conclusional assertions by the nonmoving party are insufficient to defeat summary judgment. *Duffie v. United States*, 600 F.3d 362, 371 (5th Cir. 2010).

"We have explained that 'Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment.'" *Am. Fam. Life Assur. Co. of*

*Columbus v. Biles*, 714 F.3d 887, 896 (5th Cir. 2013) (quoting *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006)). Instead, the party opposing summary judgment must "identify specific evidence in the record" supporting challenged claims and "articulate the precise manner in which that evidence supports [those] claim[s]." *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). Because our review is de novo, "[w]e may affirm a grant of summary judgment on any ground the record supports." *Cadena v. El Paso Cnty.*, 946 F.3d 717, 723 (5th Cir. 2020).

## A

Williams first argues that the district court erred by granting Ezell's summary judgment motion before she had answered his interrogatories.

Discovery is not a prerequisite to the disposition of a motion for summary judgment. *Washington v. Allstate Ins. Co.*, 901 F.2d 1281, 1285 (5th Cir. 1990). A party who contends that additional discovery is required prior to summary judgment may file a motion for a continuance under Federal Rule of Civil Procedure 56(d) with an affidavit or declaration showing "that, for specified reasons, it cannot present facts essential to justify its opposition." FED. R. CIV. P. 56(d). The party may not rely on vague assertions but "must set forth a plausible basis for believing that specified facts, susceptible of collection within a reasonable time frame, probably exist and indicate how the emergent facts, if adduced, will influence the outcome of the pending summary judgment motion." *Raby v. Livingston*, 600 F.3d 552, 561 (5th Cir. 2010) (internal quotations and citation omitted). A district court's decision whether to delay summary judgment for further discovery is reviewed for an abuse of discretion. *Biles*, 714 F.3d at 894.

Williams did not file a motion with the district court specifying why he was unable to present facts essential to justifying his opposition to Ezell's motion. FED. R. CIV. P. 56(d); *see Potter v. Delta Air Lines, Inc.*, 98 F.3d

8

881, 887 (5th Cir. 1996) (holding that party who failed to move for a continuance for additional discovery before summary judgment ruling was "foreclosed from arguing that she did not have adequate time for discovery"). On appeal, he also fails to explain how his interrogatories—which focus primarily on McDermott and the BCSO's alleged misconduct—would impact the basis upon which Ezell's summary judgment motion was granted, his failure to exhaust his administrative remedies. *See Raby*, 600 F.3d at 561; *see also Washington*, 901 F.2d at 1285 ("This court has long recognized that a plaintiff's entitlement to discovery prior to a ruling on a motion for summary judgment is not unlimited, and may be cut off when the record shows that the requested discovery is not likely to produce the facts needed by the plaintiff to withstand a motion for summary judgment."). He makes only a conclusory assertion of error. Williams has not shown that the district court abused its discretion by granting Ezell's summary judgment motion before he could conduct further discovery. *See Biles*, 714 F.3d at 894.

## B

Williams next argues that the district court erred in granting summary judgment on his Eighth Amendment claim against Bexar County. He claims that the district court narrowly read his pleadings as being only about the specific act of greenlighting, while he intended to complain about the culture of violence towards prisoners more broadly. He argues that "[t]his was error because [he] presented facts that pointed to multiple incidents which took place multiple years indicating an enduring custom, despite his inability to skillfully present them."

Section 1983 "provides a federal cause of action for the deprivation, under color of law, of a citizen's 'rights, privileges, or immunities secured by the Constitution and laws' of the United States." *Livadas v. Bradshaw*, 512 U.S. 107, 132 (1994). Under the Eighth Amendment, which prohibits cruel

and unusual punishment, prison officials have a duty to protect prisoners from attacks by other prisoners. *Farmer v. Brennan*, 511 U.S. 825, 832–33 (1994).[7] "It is not, however, every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety." *Id.* at 834. To succeed under a failure-to-protect claim, a plaintiff needs to show that he was incarcerated under conditions posing a substantial risk of serious harm and that prison officials acted with deliberate indifference to his safety. *Id.*; *see Luna v. Davis*, 59 F.4th 713, 715 (5th Cir. 2023). "In order to act with deliberate indifference, 'the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Neals v. Norwood*, 59 F.3d 530, 533 (5th Cir. 1995) (quoting *Farmer*, 511 U.S. at 837).

A municipality may be liable under § 1983 if the execution of one of its customs or policies causes the deprivation of a constitutional right. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). No liability exists under a theory of *respondeat superior* in § 1983 actions, however. *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001). "To establish municipal liability, a plaintiff must show '(1) an official policy (or custom), of which (2) a policy maker can be charged with actual or constructive knowledge, and (3) a

---

[7] It is unclear from the briefs or the record whether Williams was a pretrial detainee or a convicted prisoner when he was assaulted. "The Eighth Amendment ensures the safety of convicted prisoners while due process under the Fourteenth Amendment protects pretrial detainees." *Baughman v. Hickman*, 935 F.3d 302, 306–07 (5th Cir. 2019). Because "the State owes the same duty under the Due Process Clause and the Eighth Amendment to provide both pretrial detainees and convicted inmates with basic human needs, including medical care and protection from harm, during their confinement," the Eighth Amendment's deliberate indifference standard applies equally to failure-to-protect claims brought by pretrial detainees. *Hare v. City of Corinth*, 74 F.3d 633, 650 (5th Cir. 1996) (en banc); *see, e.g., Converse v. City of Kemah*, 961 F.3d 771, 776 n.2 (5th Cir. 2020); *Garza v. City of Donna*, 922 F.3d 626, 634 (5th Cir. 2019).

constitutional violation whose 'moving force' is that policy (or custom).'" *Newbury v. City of Windcrest*, 991 F.3d 672, 680 (5th Cir. 2021) (quoting *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002)).

Plaintiffs may show either an official policy or regulation that was officially adopted by the policy-making authority or an employee practice that is so widespread and common that it may be considered as a custom representing the policies of the municipality. *See Piotrowski*, 237 F.3d at 581. To establish that such a custom is present through the actions of municipal employees, "those actions must have occurred for so long or so frequently that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice of city employees." *Webster v. City of Houston*, 735 F.2d 838, 842 (5th Cir. 1984) (en banc); *see Zarnow v. City of Wichita Falls*, 614 F.3d 161, 169 (5th Cir. 2010) ("A customary policy consists of actions that have occurred for so long and with such frequency that the course of conduct demonstrates the governing body's knowledge and acceptance of the disputed conduct.").

In his pleadings, Williams alleged that the BCSO has a custom of deliberate indifference toward the safety of jail inmates by allowing the practice of "greenlighting." He identified three incidents of guards authorizing inmates to assault other inmates and two incidents of guards failing to intervene or protect inmates from inmate violence. In response to Bexar County's motion for summary judgment, Williams provided what appears to be a log of 95 grievances or complaints filed by inmates against guards between 2012 and 2018.[8] Each entry lists the inmate's name, the incident

---

[8] Williams's grievance log does not, on its face, contain any information about its source. Bexar County did not dispute the log's authenticity in the district court or on appeal, and it does not expressly address the log. *See Eguia v. Tompkins*, 756 F.2d 1130, 1136 (5th Cir. 1985) ("Documents presented in support of a motion for summary judgment may

date, the officer involved, a very brief description of the alleged incident, the investigation's outcome, and the response provided to the inmate. The majority of the 95 listed complaints contend that guards allowed or provoked inmates to assault other inmates. Only one of the listed complaints specifically contained the term "greenlight," however.

The district court found that Williams had not brought forward evidence of a sufficient pattern of similar incidents over a long enough period to establish a custom for the purposes of municipal liability under § 1983. First, it noted that the amended complaint and supplement to it were unverified and therefore did not constitute competent summary judgment evidence. It expressly stated, however, that even accepting Williams's allegations about the three incidents of greenlighting over a period of ten months as true, the events were "neither sufficiently numerous nor did they occur over a sufficient length of time to prove a custom of 'greenlighting' and accession to that custom by Bexar County." Although Williams's pleadings also referenced two incidents of prison officials' failing to protect inmates from inmate violence, the court found that those incidents were "clearly outside the parameters of greenlighting as defined by Williams."

Second, the district court noted that only one of the 95 incidents in the grievance log attached to Williams's summary judgment response explicitly referenced "greenlight[ing]." It explained that "it would be unreasonable to infer that the [other] incidents . . . were 'greenlighting' so as to support Williams's claim of the existence of a custom so pervasive that it supports imposition of liability upon Bexar County." The district court found that the three examples of greenlighting listed in his pleadings, plus the one entry in the

---

be considered even though they do not comply with the requirements of Rule 56 if there is no objection to their use.").

grievance log that explicitly used the term "greenlight", meant that Williams had only documented four episodes of greenlighting between 2012 and 2018, and that this was insufficient to show a pattern that survived summary judgment.[9]

Liberally construed and accepted as true by the district court, Williams's *pro se* pleadings alleged a custom of guards permitting or instigating inmate assaults, known as "greenlighting," and a custom of guards failing to intervene in incidents of inmate violence. *See Andrade v. Gonzales*, 459 F.3d 538, 543 (5th Cir. 2006) (explaining that the pleadings of *pro se* plaintiffs must be construed liberally). The grievance log contains multiple allegations that officers "allowed assault", "allowed fight to occur", "told inmate to assault [another inmate]", "provoke[ed] inmates to fight", "instigated fight[ing]", and "allowed inmate to get jumped." Although only one log entry used the term "greenlighting", nearly all 95 entries concern incidents of prison officials' failing to protect inmates from other inmates or instigating inmate-on-inmate assaults. Although the district court expressly acknowledged its duty to draw reasonable inferences in Williams's favor, it appears to have failed to weigh the evidence in the light most favorable to him by only considering incidents that were explicitly defined as "greenlighting" for purposes of showing a custom or policy. *See Poole*, 691 F.3d at 627.

Nevertheless, we may "affirm summary judgment on any ground supported by the record, even if it is different from that relied on by the district court." *Reed v. Neopost USA, Inc.*, 701 F.3d 434, 438 (5th Cir. 2012) (citation omitted). Even if the district court failed to view the evidence in the light

---

[9] On appeal, Williams does not address the district court's consideration of the grievance logs.

most favorable to Williams, it did not err by granting summary judgment for Bexar County.

A plaintiff proves the existence of a custom by showing "a pattern of abuses that transcends the error made in a single case." *Piotrowski*, 237 F.3d at 582. "A successful showing of such a pattern requires similarity and specificity; prior indications cannot simply be for any and all bad or unwise acts, but rather must point to the specific violation in question." *Hicks-Fields v. Harris Cnty.*, 860 F.3d 803, 810 (5th Cir. 2017) (internal quotations and citation omitted). "In addition to similarity and specificity, a pattern must be comprised of 'sufficiently numerous prior incidents' rather than merely 'isolated instances.'" *Fuentes v. Nueces Cnty.*, 689 F. App'x 775, 778 (5th Cir. 2017) (quoting *McConney v. City of Houston*, 863 F.2d 1180, 1184 (5th Cir. 1989)). "Showing a pervasive pattern is a heavy burden." *Sanchez v. Young Cnty.*, 956 F.3d 785, 793 (5th Cir. 2020).

Notwithstanding Williams's failure to bring forward competent summary judgment evidence,[10] he has failed to identify a genuine fact dispute regarding the existence of a policy or custom for purposes of establishing municipal liability. Although the grievance log lists 95 complaints of prison officials' failing to protect inmates from other inmates or instigating inmate-on-inmate assaults, Williams has failed to provide sufficient evidence of similarity and specificity for purposes of establishing a custom or practice. He has not provided evidence of the circumstances of those alleged assaults to establish a pattern of constitutional violations by the BCSO. Williams provides no evidence that any of the alleged complaints resulted in confirmed incidents

---

[10] Although "[a] plaintiff's verified complaint may be considered as summary judgment evidence to the extent that it comports with the requirements of [Rule 56]", an unverified complaint "does not constitute competent summary judgment evidence." *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994).

of unconstitutional misconduct. Notably, some of the complaints were withdrawn or determined to be unfounded or unsubstantiated. Without factual development, Williams has "failed to provide context that would show a pattern of establishing a municipal policy." *Peterson*, 588 F.3d at 851; *see*, e.g., *Davidson v. City of Stafford*, 848 F.3d 384, 396–97 (5th Cir. 2017), *as revised* (Mar. 31, 2017) (holding that evidence of seven incidents of false arrest were insufficient to establish pattern of constitutional violations where there was no evidence that any of those arrests resulted in litigation alleging a constitutional violation). Because the grievance log did not provide details regarding any of the 95 alleged incidents, Williams has not identified evidence of "sufficiently numerous prior incidents" to establish a custom or practice. *See Peterson*, 588 F.3d at 851–52 (holding that evidence of 27 complaints of excessive force over a three-year period was not sufficient to create a fact issue to overcome summary judgment due to the lack of factual detail and context behind those complaints); *see, e.g., Reynolds v. Wood Cnty.*, No. 22-40381, 2023 WL 3175467, at *6 (5th Cir. May 1, 2023) (unpublished) (holding that logs showing over 50 incidents in which restraint chair was used in the jail over 17-month period was not sufficient summary judgment evidence of a custom or practice of unconstitutional chair use because (1) the logs were lacking in factual detail concerning each incident and (2) there was no evidence of prior lawsuits or complaints involving the use of the restrain chair at the jail). The district court did not err by granting summary judgment for Bexar County.

## C

Williams next argues that the district court erred by granting Ezell's and McDermott's motions for summary judgment based on his failure to exhaust his administrative remedies, as no meaningful administrative remedy was available to him. In his initial brief, he contends that when he "complained, he was threatened, harassed, intimidated, and ignored by jail

officials." Williams also asserts in his reply brief that he had "timely submitted 2 grievances complaining about being assaulted, but never received responses to them, which drove him to make a record of what happened by utilizing the PREA hotline."

The Prison Litigation Reform Act (PLRA) does not allow an inmate to file a § 1983 complaint "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Prefiling exhaustion is mandatory and may not be excused. *Gonzalez v. Seal*, 702 F.3d 785, 788 (5th Cir. 2012).

The availability of a remedy is determined with reference to "the applicable procedural rules . . . defined . . . by the prison grievance process itself." *Wilson v. Epps*, 776 F.3d 296, 299 (5th Cir. 2015) (internal quotations and citation omitted) (alteration in original). "Compliance with prison grievance procedures . . . is all that is required by the PLRA to properly exhaust." *Jones v. Bock*, 549 U.S. 199, 218 (2007) (internal quotations omitted). This court strictly interprets the exhaustion requirement, holding that "prisoners must not just substantially comply with the prison's grievance procedures, but instead must exhaust available remedies *properly*." *Huskey v. Jones*, 45 F.4th 827, 831 (5th Cir. 2022) (internal quotations and citation omitted).

Under the PLRA, a grievance procedure provides "available" remedies if it is "capable of use to obtain some relief for the action complained of." *Ross v. Blake*, 578 U.S. 632, 642 (2016) (internal quotations and citation omitted). If the grievance procedure fails to provide any relief whatsoever for the complained-of actions, then no administrative remedies are available, and the exhaustion requirement does not apply. *Id.* at 643. This may occur when, among other things, prison officials thwart an inmate's efforts to comply. *Id.* at 643–44.

Here, the BCADC Inmate Handbook outlines a two-step grievance procedure. An inmate must file his or her initial grievance within 72 hours of

the incident. The inmate must also file an appeal within 72 hours of receiving a response. While a grievance should be filed using the Inmate Grievance Form, "[g]rievances will be accepted written on any kind of paper if the Grievance Form is not available." Inmates "must pursue a grievance through both steps for it to be considered exhausted." *Johnson v. Johnson*, 385 F.3d 503, 515 (5th Cir. 2004).

1.

Williams alleged that he was assaulted by Ezell on February 24, 2018. In support of her summary judgment motion, Ezell presented the affidavit of Grievance Supervisor, who stated that Williams filed his first grievance against Ezell on March 19, 2018. In response, Williams presented his grievance against Ezell, which is dated March 13, 2018. This is still outside of the 72-hour window prescribed by the BCADC Inmate Handbook.

In his response to Ezell's summary judgment motion, Williams asserted that he submitted two grievances regarding the February 20 assault prior to February 24, 2018, and never received an answer. He makes no such assertion regarding the February 24 assault, however. And conclusional assertions by the nonmoving party are insufficient to defeat summary judgment. *Duffie*, 600 F.3d at 371. Even discounting Grievance Supervisor's affidavit, which misstated the date of Williams's first grievance, Williams failed to identify evidence in the record creating a genuine issue of fact that he was "thwart[ed] . . . from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *See Ross*, 578 U.S. at 644. Williams failed to meet his burden to bring forward evidence that the administrative grievance procedure was not available to him, and the district court did not err in granting Ezell's motion for summary judgment due to Williams's failure to exhaust. *Id.*

2.

Williams alleged in his pleadings that McDermott greenlighted an attack against him on February 20, 2018. In support of his motion for summary judgment, McDermott presented Lieutenant's affidavit, which stated that Williams had called the PREA hotline on February 24, 2018, and complained about the February 20, 2018 assault. Because of the 72-hour time limit, Williams needed to file his complaint by February 23, 2018. As discussed, Williams's first written complaint regarding the incident was not filed until March 13, 2018.

Prisoners must properly exhaust their administrative remedies. *See Huskey*, 45 F.4th at 831. The BCADC Inmate Handbook specifies that a grievance should be filed using the Inmate Grievance Form, but that "[g]rievances will be accepted written on any kind of paper if the Grievance Form is not available." Because the PREA call was not a written complaint, it did not satisfy the requirements of the BCADC Inmate Handbook. However, as the district court pointed out, even if the PREA call did satisfy the grievance procedure, it was still filed outside of the 72-hour filing window.

In his response to McDermott's summary judgment motion, Williams argued that he had filed multiple grievances that were not properly documented and dated as being received. Williams did not provide the district court any evidence, outside of his conclusional statements, to show that he was prevented from filing grievances about Ezell and McDermott. *See Duffie*, 600 F.3d at 371; *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992) ("Mere conclusory allegations are not competent summary judgment evidence, and they are therefore insufficient to defeat or support a motion for summary judgment."). Notably, the BCSO's grievance records show that Williams used the grievance process at least 13 times in 2018, and that he received responses to his grievances. Williams has not met his burden to

come forward with evidence that the administrative grievance procedure was unavailable to him. The district court did not err in granting McDermott's motion for summary judgment due to Williams's failure to exhaust. *See Ross*, 578 U.S. at 643.

## D

Williams next argues that he was not provided with adequate notice of the consequences of summary judgment and the necessity of submitting affidavits in response to the motions for summary judgment. He contends that the local rules of the Western District of Texas do not provide any notice "regarding motions for summary judg[]ment." Williams argues that notice advising *pro se* litigants of their burden in opposing summary judgment must be provided by *both* the Federal Rules of Civil Procedure and the local rules to be sufficient.

The local rules of the Western District of Texas do not provide an explicit notice requirement for responding to summary judgment motions. *See* W.D. Tex. Civ. R. 7. Instead, they generally provide that "[a]ny party opposing a motion shall file a response and supporting documents as are then available. The response must contain a concise statement of the reasons for opposition to the motion and citations of the legal authorities on which the party relies." W.D. Tex. Civ. R. 7(D)(1). We have long held that "particularized additional notice of the potential consequences of a summary judgment motion and the right to submit opposing affidavits need not be afforded a pro se litigant. The notice afforded by the Rules of Civil Procedure and the local rules [is] . . . sufficient." *Martin v. Harrison Cnty. Jail*, 975 F.2d 192, 193 (5th Cir. 1992); *see also Whiting v. Kelly*, 255 F. App'x 896, 899 (5th Cir. 2007) (same).

Because the district court had no obligation to provide Williams with particularized instructions on the requirements and consequences of

19

summary judgment, he has not shown that the district court erred by granting the defendants' motions without informing him of the right to file an affidavit. *See* Fed. R. Civ. P. 56(a); *see also Martin*, 975 F.2d at 193.

### E

Finally, Williams argues that the district court erred by denying his motion for the appointment of counsel. The denial of a motion for appointment of counsel in a civil rights case is reviewed for abuse of discretion. *Naranjo v. Thompson*, 809 F.3d 793, 799 (5th Cir. 2015).

A civil rights complainant, even if indigent, "has no right to the automatic appointment of counsel." *Ulmer v. Chancellor*, 691 F.2d 209, 212 (5th Cir. 1982); *see Thompson v. Tex. Dep't of Crim. Just.*, 67 F.4th 275, 283 (5th Cir. 2023). "An attorney should be appointed only if exceptional circumstances exist." *McFaul v. Valenzuela*, 684 F.3d 564, 581 (5th Cir. 2012). Relevant factors include the type and complexity of the case and the movant's ability to present his case. *Cooper v. Sheriff, Lubbock Cnty.*, 929 F.2d 1078, 1084 (5th Cir. 1991).

The governing legal principles in this case are well-established, and much of the case appears to turn on the narrow issue of whether Williams can establish a policy or custom of prison guards permitting attacks on other inmates. On this record, Williams failed to show exceptional circumstances that justified the appointment of counsel. The district court did not abuse its discretion in refusing to appoint counsel.

\*\*\*

The district court's judgment is AFFIRMED.