# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

February 6, 2023

Lyle W. Cayce
Clerk

No. 21-50578

Richard Luna,

*Plaintiff—Appellant*,

*versus*

Lorie Davis, *Director, Texas Department of Criminal Justice, Correctional Institutions Division*; Felipe Gonzalez, *Warden, Terrell Unit, Texas Department of Criminal Justice - Correctional Institutions Division*; Bryan Collier, *Executive Director, Texas Department of Criminal Justice*; Ar'Lisa Simon-Hastings, *Chief Classification, Terrell Unit, Texas Department of Criminal Justice - Correctional Institutions Division*,

*Defendants—Appellees*.

Appeal from the United States District Court
for the Western District of Texas
USDC No. 1:20-CV-685

Before Richman, *Chief Judge*, and King and Higginson, *Circuit Judges*.

Per Curiam:

Plaintiff-appellant Richard Luna appeals the entry of summary judgment dismissing his First and Eighth Amendment claims against defendant-appellee Ar'Lisa Simon-Hastings. We REVERSE in part,

No. 21-50578

AFFIRM the district court's summary judgment dismissal of Luna's First Amendment retaliation claim, and REMAND for further proceedings.

## I.

In May 2020, Luna, proceeding pro se, filed a lawsuit in Texas state court against several officials at the Texas Department of Criminal Justice, where he remains an inmate. He alleged, *inter alia*, violations of his First and Eighth Amendment rights under 42 U.S.C. § 1983 arising out of a housing transfer and subsequent physical altercation. According to Luna, he had previously been sexually harassed and threatened by inmates in boot camp housing; after asking the sergeant for a transfer to the main building on account of the harassment and threats, he was assigned housing in the main building. After several months, however, Simon-Hastings reassigned Luna to boot camp housing on January 7, 2020, and Luna was assaulted in boot camp housing that same day. Luna further alleged that, when Simon-Hastings saw him following the assault, she told him that the assault would teach him a lesson about going over her head with housing moves.

Defendants removed the case to federal court, whereupon the district court granted their motion to dismiss all of Luna's claims except for two: Luna's First Amendment retaliation and Eighth Amendment failure-to-protect claims against Simon-Hastings. On June 9, 2021, the district court granted Simon-Hastings' motion for summary judgment on qualified immunity grounds, concluding that Luna's proffered evidence was insufficient to raise a genuine dispute of material fact concerning whether Simon-Hastings was aware that Luna faced a substantial risk of serious harm when she authorized his transfer back to boot camp housing. The district court dismissed Luna's remaining claims with prejudice, which Luna appealed.

2

No. 21-50578

## II.

We review the district court's grant of summary judgment de novo, applying the same standard used by the district court. *Nickell v. Beau View of Biloxi, L.L.C.*, 636 F.3d 752, 754 (5th Cir. 2011). Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). We view the evidence and draw all inferences in a light most favorable to the nonmovant; however, "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment." *Brown v. City of Hous.*, 337 F.3d 539, 541 (5th Cir. 2003). The pleadings and other filings of pro se litigants are construed liberally. *Coleman v. United States*, 912 F.3d 824, 828 (5th Cir. 2019).

A qualified immunity defense alters the typical summary judgment burden of proof. *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010). "Once an official pleads the defense, the burden then shifts to the plaintiff, who must rebut the defense by establishing a genuine fact issue as to whether the official's allegedly wrongful conduct violated clearly established law." *Id.* The defense has two prongs, both of which must be rebutted to overcome qualified immunity: "whether an official's conduct violated a constitutional right of the plaintiff; and whether the right was clearly established at the time of the violation." *Id.*

## III.

Luna maintains that, contrary to the district court's ruling, he raised a genuine dispute of material fact regarding his failure-to-protect claim under the Eighth Amendment. We agree.

Under the Eighth Amendment, "prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (quoting *Cortes-Quinones v. Jimenez-*

*Nettleship*, 842 F.2d 556, 558 (1st Cir. 1988)). "It is not, however, every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety." *Id.* at 834. To succeed under his failure-to-protect claim, Luna must show that he was incarcerated under conditions posing a substantial risk of serious harm and that Simon-Hastings acted with deliberate indifference to his safety. *Id.* An official acts with deliberate indifference when she "knows of and disregards an excessive risk to inmate health or safety"; she must "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" and draw the inference. *Id.* at 837.

The district court determined that there was no evidence, beyond Luna's "conclusory allegations," showing that Simon-Hastings was aware of facts from which she could infer that Luna faced a substantial risk of serious harm when she authorized his transfer to boot camp housing on January 7, 2020. In so doing, the district court treated Luna's allegation that Simon-Hastings told Luna, following the assault, that "this will teach you a lesson about going over my head with housing moves," as a conclusory allegation insufficient to create a genuine dispute of material fact. We hold that Luna's allegation is not conclusory and, in addition to other facts, establishes a genuine dispute as to whether Simon-Hastings was deliberately indifferent to the substantial risk of serious harm that Luna faced in boot camp housing.

"Self-serving affidavits and declarations, like all summary judgment evidence," must be given by competent witnesses and set out facts, made on personal knowledge and admissible in evidence, that are "particularized, not vague or conclusory." *Guzman v. Allstate Assurance Co.*, 18 F.4th 157, 161 (5th Cir. 2021). "[W]hen we have held self-serving affidavits or depositions insufficient to create a fact issue, it is because their contents were either conclusory, vague, or not based on personal knowledge." *Id.*; *see also In re Deepwater Horizon*, 48 F.4th 378, 382–83 (5th Cir. 2022) ("It is unremarkable

that evidence submitted by one side at the summary judgment stage will be 'self-serving'; the question is whether that self-serving evidence is 'conclusory, vague, or not based on personal knowledge.'" (quoting *Guzman*, 18 F.4th at 161)).

Whether a sworn statement is conclusory "is necessarily a fact-bound analysis that will depend on the facts and claims at issue." *Lester v. Wells Fargo Bank, N.A.*, 805 F. App'x 288, 292 (5th Cir. 2020). "[M]ore detailed and fact-intensive" statements can raise genuine disputes of material fact, while "[b]road legal or factual assertions . . . unsupported by specific facts are generally held to be conclusory." *Id.* (citing *Rushing v. Kan. City S. Ry. Co.*, 185 F.3d 496, 513 (5th Cir. 1999) (recognizing that "self-serving and, to an extent, conclusional" attestations may support a denial of summary judgment where such evidence proffers "potential explanations, based on their personal observations" and other specific facts), *superseded by amendment*, FED. R. EVID. 103(a), *on other grounds as recognized in Mathis v. Exxon Corp.*, 302 F.3d 448, 459 n.16 (5th Cir. 2002)); *see Guzman*, 18 F.4th at 161 (concluding that defendants' affidavits were competent summary judgment evidence because, *inter alia*, they concerned specific "personal experiences" and were "particularized rather than vague or conclusory"); *In re Deepwater Horizon*, 48 F.4th at 383–86 (relying on declaration by plaintiff's president to conclude that there was a genuine dispute of material fact).

In *Johnson v. Johnson*, for example, the plaintiff's complaint and affidavit laid out detailed factual allegations regarding a series of events that occurred over a period of eighteen months; in evaluating his failure-to-protect claim, we did not treat his allegations, which, like here, contained specific statements made by defendants, as conclusory. 385 F.3d 503, 526–27 (5th Cir. 2004). Instead, we determined that, "[g]iven the facts that we must assume for purposes of this appeal," the defendants did not respond

reasonably to the threats faced by the plaintiffs and contravened clearly established law. *Id.* at 527.

Here, Luna's allegation that Simon-Hastings told him that the January 7 assault would teach him a lesson is supported by specific facts contained in his complaint. The complaint alleged that Luna had experienced threats and harassment from other inmates in boot camp housing beginning on May 22, 2019, which led to his decision to ask the sergeant for a housing transfer on August 26, 2019. Luna filed an officer protection investigation for threat of violence at that time, but its outcome was unsubstantiated due to a lack of evidence. Nevertheless, Luna was brought before the Unit Classification Committee ("UCC"), which handles housing assignments, and three days after requesting a transfer, he was moved to a different building. Because Simon-Hastings reviews the basis for housing assignments made by the UCC as part of her duties, Luna alleged that she had personal knowledge that he was transferred because of the threats and harassment he purportedly experienced. Then, on January 7, 2020, Simon-Hastings transferred Luna back to boot camp housing, and he was assaulted. Luna alleged that Simon-Hastings saw him following the assault, at which point she made the statement in question. Contrary to the district court's conclusion, Luna's allegation regarding the statement is not conclusory when viewed in this context: he explained his and Simon-Hastings' shared history leading up to the alleged statement and described her possible motivation in saying it. Taken in a light most favorable to Luna, Simon-Hastings' statement, alongside the other facts contained in his complaint, shows that she was aware that Luna faced a risk of being assaulted upon his transfer back to boot camp housing.

Because the statement is not conclusory, the district court erred in not considering it when determining whether there was a genuine dispute of material fact regarding Simon-Hastings' deliberate indifference to the

substantial risk of serious harm that Luna faced. Simon-Hastings argues that there is not a genuine material factual dispute with respect to whether she was aware that Luna faced a serious risk to his safety or even whether Luna's safety was substantially at risk in boot camp housing because the August 2019 investigation was unsubstantiated due to a lack of evidence. In the alternative, she avers that there is not a genuine material factual dispute with respect to whether she was deliberately indifferent to Luna's need for protection because: (1) the official response to Luna's grievance indicated the transfer back to boot camp housing "was an unintentional act not meant to cause [Luna] harm"; and (2) on January 14, 2020, Simon-Hastings ensured that Luna would never again be housed with the inmate who allegedly assaulted him by adding a note to Luna's housing file.

Taking the evidence in a light most favorable to Luna, as we are required to do, we disagree. As an initial matter, the substantial risk of serious harm that Luna faced was apparent: he had been harassed and threatened by other inmates at least twice before his transfer, and at least one of these times those inmates threatened to kill Luna and told him that they would sexually assault him when he was dead; when he was transferred back, he was assaulted almost immediately, several of his teeth were knocked out, his arm was dislocated, and his face was battered and lacerated. Simon-Hastings' statement suggests that she was aware of the earlier assault and the risk that a similar incident could take place upon Luna's transfer back to boot camp housing. It is plausible that other officials were not aware of Simon-Hastings' alleged motive for the transfer and that she separated Luna from the assailant because she had no other choice: the threat had been substantiated by the officer protection investigation relating to the January 7 assault. Therefore, these facts are consistent with Luna's allegation that Simon-Hastings transferred Luna back to boot camp housing to teach him a lesson about seeking housing transfers from other officials, knowing that he faced a

substantial risk of being assaulted by the inmates who he had previously reported to prison officials during the August 2019 officer protection investigation.

We conclude that this statement is sufficient to create a genuine material factual dispute. However, we do not decide whether, given this factual dispute, Simon-Hastings violated clearly established law. The district court did not reach this issue, and "we are a court of review, not of first view." *Cutter v. Wilkinson*, 544 U.S. 709, 718 n.7 (2005).

Regarding the district court's summary judgment dismissal of Luna's First Amendment retaliation claim, Luna does not raise the issue in his briefing before this court. Accordingly, this issue has been abandoned, and we do not consider it. *Yohey v. Collins*, 985 F.2d 222, 224–25 (5th Cir. 1993) (stating that arguments that have not been briefed have been abandoned).

## IV.

For the foregoing reasons, we REVERSE in part, AFFIRM the district court's summary judgment dismissal of Luna's First Amendment retaliation claim, and REMAND for further proceedings.