# United States Court of Appeals
# for the Fifth Circuit

No. 24-30317

United States Court of Appeals
Fifth Circuit

**FILED**

April 11, 2025

Lyle W. Cayce
Clerk

Brandon Scott Lavergne,

*Plaintiff—Appellant*,

*versus*

Randy Lavespere, *Doctor/Medical Director- Louisiana State Penitentiary*; Cindy Park, *Nurse Practitioner-* Louisiana State Penitentiary; Brady Boudin, *Respiratory Specialist -* Louisiana State Penitentiary; Jacob C. Johnson, *Hospital Administrator - Louisiana State Penitentiary*,

*Defendants—Appellees*.

_____

Appeal from the United States District Court
for the Middle District of Louisiana
USDC No. 3:21-CV-344

_____

Before Dennis, Haynes, and Engelhardt, *Circuit Judges*.

Per Curiam:[*]

Brandon Scott Lavergne filed a pro se 42 U.S.C. § 1983 suit against medical personnel at the Louisiana State Penitentiary ("LSP"); namely, Dr. Randy Lavespere, a former LSP medical director; hospital administrator

_____

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 24-30317

Jacob C. Johnson; nurse practitioner Cindy Park; and respiratory specialist Brady Baudin.    Alleging that the defendants acted with deliberate indifference to his serious medical needs by failing to treat his sleep apnea, Lavergne requested injunctive relief and damages.    The district court dismissed some of the claims and granted the defendants' motion for summary judgment on the remaining claims.  We AFFIRM.

## I.    Background

Lavergne filed his complaint in 2021 and supplemented it with a verified statement in February 2022.[1]  Lavergne arrived at LSP in 2012 with a continuous positive airway pressure machine ("CPAP") for treating sleep apnea, a condition with which he had recently been diagnosed.    LSP apparently denied Lavergne use of the CPAP machine, which led him to file a separate lawsuit in 2013 against LSP personnel alleging a violation of his Eighth Amendment rights.[2]  In August 2014, Dr. Lavespere ordered a sleep study for Lavergne, which apparently showed that he did not have obstructive sleep apnea.  Afterward, Dr. Lavespere informed Lavergne that he would not receive a new CPAP based on the results of the sleep study.  According to Lavergne, the 2014 study was flawed.

Between 2015 and 2017, Lavergne sporadically complained about sleep apnea.  Each time, LSP medical staff evaluated him and determined that either Lavergne denied specific symptoms of sleep apnea or his physical examinations were unremarkable.

---

[1] The magistrate judge later struck an amended complaint that Lavergne filed in November 2021.

[2] A jury found that Lavergne's constitutional rights were violated.  *See generally Lavergne v. Cain*, No. 13-233 (M.D. La. Sept. 28, 2016).  But the defendants in that case did not raise a qualified immunity defense, and the case never reached us on appeal.

Eventually, a new sleep study was ordered for Lavergne in 2018, and he received a pre-study checkup with Baudin.

Later that year, Lavergne was placed in solitary confinement, which caused him to gain weight and allegedly worsened his sleep apnea. Prison officials knew that weight gain could have this effect, as evidenced by their responding to grievances about untreated sleep apnea by advising Lavergne to maintain a healthy weight.

Another sleep study was ordered for Lavergne in 2019, but it did not occur. Johnson ordered a sleep study in 2020 in response to an administrative remedy procedure, but this resulted only in another checkup with Baudin. Dr. Hal MacMurdo,[3] a doctor at LSP, allegedly told Lavergne that Dr. Lavespere was blocking his sleep studies, but that Dr. MacMurdo did not know why. Although Park told Lavergne in April 2021 that she would ensure he underwent a sleep study within two weeks, that assurance proved hollow. Lavergne allegedly sent several letters to Dr. Lavespere and Johnson requesting assistance but received no response. Meanwhile, he allegedly suffered from symptoms such as chronic fatigue, blurry vision, coughing at night, and decreased focus.

Finally, in January 2022, Baudin gave Lavergne a harness he could use to perform an "at home" sleep study. Lavergne used the harness as instructed, and the results indicated that he had obstructive sleep apnea. Baudin provided a variable positive airway pressure machine as treatment. Baudin allegedly admitted to Lavergne that the "at home" test had been available for at least five years. Lavergne then filed suit.

---

[3] Lavergne and the magistrate judge spelled his name as "McMurdo." Because the defendants, with whom he is more closely associated, spell his name as "MacMurdo," that is the spelling we use.

In the current lawsuit, Dr. Lavespere, Johnson, and Park filed a motion to dismiss the claims against them; Baudin had not yet been served with the complaint. The district court granted the motion in part, dismissing Lavergne's claims against Johnson and Park as well as his claim for injunctive relief and his official-capacity claims for money damages. The district court also held that Lavergne failed to state a claim to the extent he alleged that he was entitled to a response to his informal complaints about untreated sleep apnea. It declined to dismiss the claim that Dr. Lavespere acted with deliberate indifference.

The remaining parties—Dr. Lavespere and Baudin—filed cross motions for summary judgment. The magistrate judge recommended denying Lavergne's motion and granting that of Dr. Lavespere and Baudin, concluding that they were entitled to qualified immunity. The district court adopted the magistrate judge's recommendation, overruled Lavergne's objections, and dismissed the case with prejudice. Lavergne timely appealed.

## II.    Jurisdiction & Standard of Review

The district court had subject matter jurisdiction over this § 1983 case pursuant to 28 U.S.C. § 1331. Because the district court's summary judgment order was a final order, we have jurisdiction over Lavergne's appeal. 28 U.S.C. § 1291; *see also Meadaa v. K.A.P. Enters., L.L.C.*, 756 F.3d 875, 879 (5th Cir. 2014) (explaining that when a final judgment is appealed "all interlocutory orders of the district court leading up to the judgment merge into the final judgment and become appealable at that time" (quotation omitted)).

We review de novo the district court's partial dismissal under Federal Rule of Civil Procedure 12(b)(6). *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (per curiam). Orders granting summary judgment are also reviewed de novo. *Nickell v. Beau View of Biloxi, L.L.C.*, 636 F.3d 752, 754

(5th Cir. 2011). Because Lavergne is pro se, we construe his filings liberally. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

## III.    Discussion

"A prison official violates the Eighth Amendment's prohibition against cruel and unusual punishment when his conduct demonstrates deliberate indifference to a prisoner's serious medical needs, constituting an unnecessary and wanton infliction of pain." *Easter v. Powell*, 467 F.3d 459, 463 (5th Cir. 2006) (per curiam) (internal quotation marks and citation omitted). A state actor is deliberately indifferent to a serious medical need or risk of serious harm if he is "actually aware of the risk, yet consciously disregard[s] it." *Lawson v. Dallas County*, 286 F.3d 257, 262 (5th Cir. 2002). A plaintiff must show that "officials refused to treat him, ignored his complaints, intentionally treated him incorrectly," or otherwise "clearly evince[d] a wanton disregard for any serious medical needs." *Domino v. Tex. Dep't of Crim. Just.*, 239 F.3d 752, 756 (5th Cir. 2001) (quotation omitted). This "is an extremely high standard to meet." *Id.* In addition, where a claim of deliberate indifference is based on a delay in medical care, the plaintiff must show that the delay "result[ed] in substantial harm." *Easter*, 467 F.3d at 463 (quotation omitted).

### A.  Partial dismissal under Rule 12(b)(6)

Lavergne first challenges the district court's dismissal of his deliberate indifference claim against Park and Johnson.[4]

---

[4] Even construing Lavergne's appellate brief liberally, he does not seem to challenge the district court's dismissal under Rule 12(b)(1) of his § 1983 claim for money damages against defendants in their official capacities. We therefore need not address that holding.

No. 24-30317

On a Rule 12(b)(6) motion to dismiss for failure to state a claim, we accept all well-pleaded facts as true, construing all reasonable inferences in the light most favorable to the plaintiff. *White v. U.S. Corrs., L.L.C.*, 996 F.3d 302, 306–07 (5th Cir. 2021). "But we do not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Id.* at 307 (quotation omitted). "To survive a Rule 12(b)(6) motion to dismiss, a complaint does not need detailed factual allegations, but must prove the plaintiff's grounds for entitlement to relief—including factual allegations in a complaint that when assumed to be true raise a right to relief above the speculative level." *Id.* (quotations omitted).

The magistrate judge concluded that, with regards to Park and Johnson, Lavergne "failed to allege any action or inaction on the part of either defendant that shows that either defendant refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for his serious medical needs." To the contrary, Lavergne alleged that Park called Baudin to schedule a sleep study, and Johnson ordered a sleep study in response to Lavergne's grievance.

Lavergne argues that Park and Johnson "had a chance to force" Baudin "to give [him] a sleep study in 2018 and 2019 and did not." He cites *Inmates of Occoquan v. Barry*, 717 F. Supp. 854 (D.D.C. 1989) for support. But that case is different. It involved a prison's systemic failure "in the areas of sanitation, bathroom facilities, fire safety, health care, and staffing" that rose to the level of an Eighth Amendment violation. *Id.* at 869. Even if we were bound by *Inmates of Occoquan*, which we are not, nowhere does it say that acting in response to an inmate's medical needs but neglecting to force those in charge to take further action meets the "extremely high standard" of deliberate indifference. *Domino*, 239 F.3d at 756; *see Lawson*, 286 F.3d at 262–63 ("Deliberate indifference cannot be inferred from a prison official's

mere failure to act reasonably, i.e., it cannot be inferred from negligence alone."). Accordingly, we agree with the district court's dismissal of Lavergne's deliberate indifference claims against Park and Johnson.

## B. Summary judgment

We turn next to the district court's grant of summary judgment to Dr. Lavespere and Baudin based on qualified immunity.

On a motion for summary judgment, we view the evidence in the light most favorable to the nonmoving party, although "conclusional allegations and unsubstantiated assertions may not be relied on as evidence." *Carnaby v. City of Houston*, 636 F.3d 183, 187 (5th Cir. 2011). Summary judgment is properly granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A fact dispute is "material" if the evidence would allow a reasonable jury to find in favor of the nonmoving party. *Cuadra v. Hous. Indep. Sch. Dist.*, 626 F.3d 808, 812 (5th Cir. 2010). If a moving party meets its initial burden, the burden shifts to the nonmoving party to "identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim." *Duffie v. United States*, 600 F.3d 362, 371 (5th Cir. 2010) (quotation omitted).

"A qualified immunity defense alters the typical summary judgment burden of proof" because the plaintiff has the burden of rebutting it. *Luna v. Davis*, 59 F.4th 713, 715 (5th Cir. 2023) (per curiam). "The defense has two prongs, both of which must be rebutted to overcome qualified immunity: whether an official's conduct violated a constitutional right of the plaintiff; and whether the right was clearly established at the time of the violation." *Id.* (internal quotation marks and citation omitted).

For qualified immunity, "a law is clearly established if it is sufficiently clear that a reasonable official would understand that what he or she is doing

violates that right." *Easter*, 467 F.3d at 465 (cleaned up) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful . . . but it is to say that in the light of pre-existing law the unlawfulness must be apparent." *Anderson*, 483 U.S. at 640.

The district court granted summary judgment to Baudin and Dr. Lavespere because, among other things, Lavergne did not adequately rebut the defendants' qualified immunity defense as to the substantial harm requirement. On appeal, Lavergne argues that he demonstrated substantial harm because he suffered from "headaches, body aches, mental confusion, and extreme exhaustion" allegedly caused by sleep apnea.

Lavergne has not cited, nor have we independently located, a published opinion in which we have previously addressed whether some or all of Lavergne's symptoms constitute substantial harm. We do, however, have one unpublished opinion in which we dismissed a plaintiff's deliberate indifference appeal because the record evidence failed to "reflect[] that [the plaintiff] suffered substantial harm as a result of not receiving CPAP treatment" for his sleep apnea. *Washington v. Thomas*, 264 F.3d 1140 (5th Cir. June 18, 2021) (per curiam) (unpublished). The district court and the defendants also cite a handful of lower court opinions holding that symptoms from moderate sleep apnea caused by a delay in receiving a CPAP do not constitute substantial harm in the Eighth Amendment context.[5] Accordingly, as to the substantial harm requirement, we are unable to say that the remaining defendants' "conduct was objectively unreasonable in the

---

[5] *See, e.g.*, *Bollig v. Colo. Dep't of Corrs.*, No. 1:20-cv-01004-DDD-SKC, 2023 WL 2467336, at *3 (D. Colo. Mar. 2, 2023); *Santana v. Watson*, No. 13 Civ. 1549(SAS), 2014 WL 1803308, at *5 (S.D.N.Y. May 6, 2014); *Nesmith v. S. Health Partners*, No. 11-425, 2012 WL 426606, at *4 (W.D. Pa. Jan. 10, 2012).

light of the clearly established law at the time of the incident." *Domino*, 239 F.3d at 755 (quotation omitted); *see also Easter*, 467 F.3d at 465 (explaining that "in the light of pre-existing law the unlawfulness must be *apparent*" (emphasis added)).[6]

The dissenting opinion would hold otherwise. Citing *Easter*, it argues that if chest pain was enough for substantial harm in that case, it is clearly established that Lavergne's symptoms constituted substantial harm. But the dissenting opinion's description of *Easter* leaves out some important details. There, the plaintiff was denied treatment despite having a "history of serious heart problems"—including a previous heart attack—and suffering "*severe* chest pain" to the point that "blood vessels in his left eye had burst, causing it to fill with blood." *Easter*, 467 F.3d at 461 (emphasis added). That is a different situation than the one we have here.[7]

The dissenting opinion also states that we should not affirm on this basis in part because this precise issue wasn't fully briefed below. But the briefing below placed the full qualified immunity issue squarely before the district court. As stated above, it is the plaintiff's burden to rebut both prongs of qualified immunity at the summary judgment stage. *Luna*, 59 F.4th at 715.

---

[6] Lavergne raises several other issues that we need not discuss because they do not affect our affirmance on these grounds.

[7] The dissent's reliance on *Petzgold v. Rostollan*, 946 F.3d 242 (5th Cir. 2019) is also unconvincing. First, *Petzgold*'s substantial harm discussion was dicta located in a footnote. *Id.* at 249 n.30. Second, the plaintiff in that case had to live with an untreated broken ankle, which again, is different from the situation here. *Id.* Finally, contrary to the dissenting opinion's contention, we have never said that *any* additional pain equals substantial harm. *See id.* at 249 ("[T]he prisoner must prove that the delay in or denial of medical treatment resulted in substantial harm, *such as* additional pain." (emphasis added)); *Alderson v. Concordia Par. Corr. Facility*, 848 F.3d 415, 422 (5th Cir. 2017) (per curiam) ("The pain suffered during a delay in treatment *can* constitute a substantial harm." (emphasis added)). "*Any* pain" and "*substantial* harm" are plainly not synonymous.

No. 24-30317

Because Lavergne did not meet that burden, we affirm the district court's grant of summary judgment based on qualified immunity rather than delay that conclusion. *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (per curiam) ("[W]e repeatedly have stressed the importance of resolving immunity questions at the earliest possible stage in litigation."); *Pearson v. Callahan*, 555 U.S. 223, 237 (2009) (noting that qualified immunity is "an immunity from suit rather than a mere defense to liability").

## IV.    Conclusion

For the reasons discussed, we AFFIRM the district court's dismissal of the claims against Park and Johnson and its grant of summary judgment to Baudin and Dr. Lavespere.

No. 24-30317

James L. Dennis, *Circuit Judge*, concurring in part and dissenting in part:

The majority opinion's affirmation of summary judgment for Dr. Lavespere and Baudin on Lavergne's delayed medical treatment deliberate indifference claim fails as a matter of procedure and law. I respectfully dissent in part.[1]

*First*, the majority opinion erroneously affirms the district court's judgment on a ground heretofore never raised in this litigation—and then continues to err by faulting Lavergne (who is self-represented and incarcerated) for failing to brief the issue that only the majority has raised. Specifically, the majority concludes Dr. Lavespere and Baudin are entitled to qualified immunity on the second prong[2] because "Lavergne has not cited . . . a published opinion in which we have previously addressed whether some or all of Lavergne's symptoms constitute substantial harm." *Ante*, at 8. Yet that is not why the district court found these defendants were entitled to qualified immunity. "[T]he district court found the first step of the qualified immunity analysis was not satisfied since Lavergne did not prove the conduct of Dr. Lavespere and Brady Baudin violated his Eighth Amendment rights." The district court said exactly nothing about the second qualified immunity prong. For good reason: no one argued in the court below that the substantial harm issue was not clearly established. And no one argues otherwise on appeal. True enough, we "may affirm a grant of summary judgment on any

_____

[1] I concur only to the extent the majority opinion affirms the Federal Rule of Civil Procedure 12(b)(6) dismissal of Parker and Johnson.

[2] "Public officials are entitled to qualified immunity unless the plaintiff can plead specific allegations, demonstrating (1) the violation of a constitutional right that (2) was clearly established at the time of the alleged misconduct." *Linicomn v. Hill*, 902 F.3d 529, 533 (5th Cir. 2018).

ground[] supported by the record," but *only* when that ground was "presented to the district court." *Cuadra v. Hous. Indep. Sch. Dist.*, 626 F.3d 808, 812 (5th Cir. 2010) (HAYNES, J.); *Wantou v. Wal-Mart Stores Tex., L.L.C.*, 23 F.4th 422, 430 (5th Cir. 2022) (ENGELHARDT, J.). It is therefore both unfair and incorrect to affirm the entry of summary judgment on a ground the majority has raised *sua sponte* for the first time in its opinion.

*Second*, beyond the glaring procedural infirmity, the majority opinion is mistaken that the substantial harm issue is not clearly established. "To establish liability based on a delay in medical treatment, a plaintiff must show deliberate indifference to serious medical needs *that resulted in substantial harm*." *Alderson v. Concordia Par. Corr. Facility*, 848 F.3d 415, 422 (5th Cir. 2017) (emphasis added) (citing *Easter v. Powell*, 467 F.3d 459, 464 (5th Cir. 2006)). Since at least 2006, it has been clearly established in the Fifth Circuit that any additional pain attributable to delayed medical treatment constitutes "substantial harm." *See, e.g., id.* (relying on *Easter*, a 2006 published opinion, and noting "Fifth Circuit precedent does not limit substantial harm to lifelong handicap or permanent loss"); *id.* (again relying on *Easter* and emphasizing that "our precedent allows recovery for pain suffered during a delay in treatment caused by deliberate indifference" and "[t]he pain suffered during a delay in treatment can constitute a substantial harm and form the basis for an award of damages"); *Petzold v. Rostollan*, 946 F.3d 242, 249 (5th Cir. 2019) (relying on *Alderson* and stating that "the prisoner must prove that the delay in or denial of medical treatment resulted in substantial harm, such as suffering additional pain"); *Austin v. City of Pasadena*, 74 F.4th 312, 328 (5th Cir. 2023) ("The detainee need not die, or be permanently injured, before an actionable claim arises for delayed [medical] treatment; rather, a plaintiff may recover for pain suffered during a delay in treatment caused by deliberate indifference."); *Thomas v. Mills*, 614 F. App'x 777, 777–78 (5th Cir. 2015) (vacating dismissal of § 1983 deliberate indifference claim

based on the defendant's failure to replace an individual's CPAP machine for five months; noting the delay caused the detainee to suffer "choking and gasping for air throughout the night"). Because the "substantial harm" bar is not particularly high, our court has found the requirement satisfied when an inmate suffered chest pain, *Easter*, 467 F.3d at 465, and, in another case, "pain over the weekend," *Petzold*, 946 F.3d at 250 n.30.

Here, Lavergne presented evidence that the delayed medical treatment caused him, in 2018 and later, to suffer disrupted sleep, extreme exhaustion, gasping for air, daytime fatigue, blurred vision, headaches, body aches, increased heart rate and blood pressure, and depression. The majority opinion counters that it is unable to locate a published opinion specifically dealing with these symptoms. But the notion that the law can only be clearly established when there is a published opinion concerning an inmate's particular symptoms contradicts precedents dictating that the "focus" of the qualified immunity analysis is whether the official had "fair notice" that his conduct was unlawful. *Mullenix v. Luna*, 577 U.S. 7, 11 (2015); *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (explaining that the "focus" of qualified immunity analysis is "whether the offic[ial] had fair notice that her conduct was unlawful"); *Morgan v. Swanson*, 659 F.3d 359, 372 (5th Cir. 2011) (en banc) ("The *sine qua non* of the clearly-established inquiry is 'fair warning.'"). As we held in *Easter*, the clearly-established-law requirement does not mean "that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful; but it [does mean] that in the light of pre-existing law the unlawfulness must be apparent." 467 F.3d at 465 (quotation omitted) (emphasis added). "The law can be clearly established 'despite notable factual distinctions between the precedents relied on and the cases then before the Court, so long as the prior decisions gave reasonable warning that the conduct then at issue violated

No. 24-30317

constitutional rights.'" *Trammell v. Fruge*, 868 F.3d 332, 339 (5th Cir. 2017) (quoting *Ramirez v. Martinez*, 716 F.3d 369, 379 (5th Cir. 2013)).

Applying those precepts here, if "pain over the weekend" (*Petzold*, 946 F.3d at 250 n.30) and "chest pain" (*Easter*, 467 F.3d at 465)—and, more broadly, any "additional pain" attributable to delayed treatment (*Petzold*, 946 F.3d at 249)—is "substantial harm," then a reasonable official should know that disrupted sleep, extreme exhaustion, gasping for air, daytime fatigue, blurred vision, headaches, body aches, increased heart rate and blood pressure, and depression constitutes substantial harm too. *Easter*, 467 F.3d at 465.[3]

Turning to the prong of qualified immunity that the district court did reach—whether there was a violation of a constitutional right—the lower court simply concluded that Lavergne's sleep apnea symptoms did not constitute "substantial harm" because he didn't suffer lasting symptoms like congestive heart failure. Not so. As the above-cited cases illustrate, the substantial-harm-bar is cleared when delayed medical treatment causes any additional pain to the inmate. That is exactly what we have here.

\*    \*    \*

At bottom, of course "Lavergne has not cited . . . a published opinion in which we have previously addressed whether some or all of Lavergne's

---

[3] The majority opinion relies on *Washington v. Thomas*, 264 F.3d 1140 (5th Cir. 2001) (unpublished), to support that the substantial harm issue is not clearly established. *Washington* provides no succor. That roughly two-paragraph unpublished opinion concerned a "without merit and therefore frivolous appeal" of an inmate's claim that "defendants were deliberately indifferent to his serious medical needs by failing to provide him with a CPAP . . . machine for his sleep apnea." *Id.* at \*1. Unlike Lavergne, the plaintiff in *Washington* did not even allege that he "suffered substantial harm as a result of not receiving CPAP treatment," so the panel found no error in the district court's Rule 12(b)(6) dismissal. *Id.*

symptoms constitute substantial harm." *Ante*, at 8. It is not an issue properly before this court. In any event, the law is clearly established. I would reverse the district court's judgment with respect to Dr. Lavespere and Baudin and remand for further proceedings.

I respectfully but emphatically dissent in part.