# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

March 28, 2011

Nos. 10-60204, 10-60205, 10-60206, 10-60207

Lyle W. Cayce
Clerk

DOUGLAS L. NICKELL; GAYLE F. NICKELL,

Plaintiffs - Appellants

v.

BEAU VIEW OF BILOXI, L.L.C.,

Defendant - Appellee

ROBERT G. PATRICK; FRANCES P. PATRICK; BIG CONFEDERATE DOGS, L.L.C.,

Plaintiffs - Appellants

v.

BEAU VIEW OF BILOXI, L.L.C.,

Defendant - Appellee

TIMOTHY E. DURST; DAVID J. WAAGBO,

Plaintiffs - Appellants

v.

BEAU VIEW OF BILOXI, L.L.C.,

Defendant - Appellee

ANDREW CUMMING,

Nos. 10-60204, 10-60205, 10-60206, 10-60207

Plaintiff - Appellant

v.

BEAU VIEW OF BILOXI, L.L.C.,

Defendant - Appellee

———————————

Appeals from the United States District Court
for the Southern District of Mississippi

———————————

Before KING, DAVIS, and SOUTHWICK, Circuit Judges.

LESLIE H. SOUTHWICK, Circuit Judge:

Plaintiffs were purchasers of condominium units at a planned development on the Mississippi Gulf Coast. They seek to rescind their sales contracts on the basis of violations of the Interstate Land Sales Full Disclosure Act. The district court granted summary judgment in favor of the defendant Beau View, holding that a statutory exemption applied.

We REVERSE and REMAND.

## FACTS AND PROCEDURAL HISTORY

Beau View of Biloxi, L.L.C. is a condominium developer. In 2004, Beau View purchased a plot of land in Biloxi, Mississippi on the coast of the Gulf of Mexico. It engaged in a national marketing campaign for a planned four-tower, 456-unit condominium development.

Beau View took reservations for units in the form of non-binding agreements that allowed potential purchasers to cancel their reservation and obtain a refund of their deposit at any time. After prospective purchasers reserved nearly all of the 112 units in Tower I, Beau View began taking

Nos. 10-60204, 10-60205, 10-60206, 10-60207

reservations for units in Tower II, though potential purchasers were advised Tower II might not be constructed if there was insufficient interest.

After Hurricane Katrina hit the Gulf Coast in August 2005, the market for condominium units there declined sharply. Beau View would enter into binding sales contracts for only 87 of the units in Tower I. Construction of Tower I was completed in November 2007. According to Beau View, many purchasers backed out of their agreements before closing, and sales on only 62 units have closed to date, with the remaining 50 units in Tower I unsold.

Plaintiffs are four separate parties of condominium purchasers. Each of the four parties signed a "Condominium Sale and Purchase Agreement" in June or July of 2005 for a unit in Tower I. Hurricane Katrina struck on August 29, 2005. Plaintiffs closed on their respective units in November and December 2007, after Beau View completed construction.

On June 27, 2008, Plaintiffs, through separate letters to Beau View, demanded rescission of their sales contracts. They alleged that Beau View had failed to provide them with disclosures required under the Interstate Land Sales Full Disclosure Act ("ILSA"). 15 U.S.C. § 1701-1720. The same day, Plaintiffs filed four separate lawsuits against Beau View in the U.S. District Court for the Southern District of Mississippi seeking rescission of their contracts and damages.

The district court consolidated the four actions, and the parties proceeded with discovery. In October 2009, cross motions for summary judgment were filed. Plaintiffs asked the district court to find that Beau View violated ILSA, with damages to be determined at trial. Beau View argued it did not violate ILSA because the lots sold to Plaintiffs were exempt from the statute's registration and disclosure requirements. In the alternative, Beau View sought partial summary judgment on Plaintiffs' claims for rescission, arguing the claims were barred by the two-year statute of limitations.

Nos. 10-60204, 10-60205, 10-60206, 10-60207

The district court entered summary judgment in favor of Beau View, dismissed Plaintiffs' claims in all four cases, and dismissed as moot Beau View's motion for partial summary judgment. The district court found that Plaintiffs' units were exempt from the disclosure requirements of ILSA, and therefore Beau View could not be liable for failing to provide the required property report. Plaintiffs appealed separately, and the four cases were consolidated for briefing and oral argument.

## DISCUSSION

"We review a grant of summary judgment de novo, applying the same standard as the district court." *Addicks Servs., Inc. v. GGP–Bridgeland, LP*, 596 F.3d 286, 293 (5th Cir. 2010). Summary judgment is proper only where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine if the summary judgment "evidence is such that a reasonable jury could return a verdict for the" non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

As Judge Clark of this court wrote 30 years ago, ILSA was enacted as a measure "to insure that a buyer, prior to purchasing certain kinds of real estate, is informed of facts which will enable him to make an informed decision about purchasing the property." *Law v. Royal Palm Beach Colony, Inc.*, 578 F.2d 98, 99 (5th Cir. 1978). To accomplish this purpose, ILSA requires all developers offering lots for sale in interstate commerce to submit an extensive "statement of record" to the Secretary of the U.S. Department of Housing and Urban Development ("HUD"). 15 U.S.C. §§ 1703(a)(1)(A), 1706. Developers must also provide all potential purchasers with a "printed property report" prior to the purchaser's signing of any contract or agreement to purchase. *Id.* § 1703(a)(1)(B). Regulations were adopted that included condominium units within the definition of "lots" under ILSA, a definition we conclude is consistent

with the statute. *See Winter v. Hollingsworth Props., Inc.*, 777 F.2d 1444, 1447-49 (11th Cir. 1985).

If these disclosures are not given, the statute provides the purchaser with an exclusive option to revoke their contract. *Id.* § 1703(c). This option must be exercised within two years of the date of violation. *Id.* It is undisputed that Beau View provided none of Plaintiffs with the required disclosures prior to the signing of the purchase agreements.

Certain sales, however, are exempt from ILSA's requirements. *Id.* § 1702. This appeal concerns the operation of two of the exemptions. One exemption, the 100-lot exemption, provides that ILSA's registration and disclosure requirements do not apply to "the sale . . . of lots in a subdivision containing fewer than one hundred lots which are not exempt under subsection (a) of this section[.]" *Id.* § 1702(b)(1). Not directly applicable here is a second exemption which may be combined with the 100-lot exemption. We will discuss how Beau View argues they would have utilized the two together. ILSA's requirements do not apply to a sale "of land under a contract obligating the seller . . . to erect such a building thereon within a period of two years." *Id.* § 1702(a)(2).

The Beau View development was to have more than 100 units when constructed, but all the sales at issue in this suit occurred prior to 100 units being sold. Beau View did not enter into any sales contracts in which it obligated itself to construct the condominium building within two years. It argues that an acceptable utilization of the two exemptions in tandem is to use the first exemption until almost 100 lots have been sold, and thereafter to enter into contracts containing a commitment to erect a building within two years.

The only issue we must decide is whether the 100-lot exemption applies until 99 lots are sold of a larger development, or whether it applies only to developments being promoted as having fewer than 100 lots when completed.

Nos. 10-60204, 10-60205, 10-60206, 10-60207

Beau View argues that Plaintiffs' units are exempt under ILSA because the 100-lot exemption applies as long as it intended to use the Section 1702(a)(2) exemption for sales above 99 units in Tower I. Beau View maintains it has always planned to sell no more than 90 units before including an addendum in future sales contracts guaranteeing the project would be completed within two years.

Supporting Beau View's argument are Guidelines created by the HUD Office of Interstate Land Sales Registration. These Guidelines provide that "[d]evelopers of subdivisions containing more than 99 lots who wish to operate under [the 100-lot] exemption must assure themselves that all lots in excess of 99 have been and will be sold in transactions" utilizing another exemption. 61 Fed. Reg. 13,596-01, 13,604 (Mar. 27, 1996) (Guidelines Part V(a)).

The HUD Guidelines were not subject to notice and comment procedures. Such internal agency guidelines are entitled to a degree of deference, we consider them only to the "extent that those interpretations have the 'power to persuade[.]'" *Christensen v. Harris Cnty.*, 529 U.S. 576, 587 (2000) (citation omitted). Where an "agency has not used a deliberative process such as notice-and-comment rulemaking," this court does not grant the agency's interpretation *Chevron* deference. *Freeman v. Quicken Loans, Inc.*, 626 F.3d 799, 805-06 (5th Cir. 2010) (referring to *Chevron, U.S.A. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842-43 (1984)).

Of central importance today is that we do not examine sources of meaning external to the statute when the statutory language is clear. *Id.* at 805. With the relevant provisions of ILSA, we need not look beyond the statutory language.

The 100-lot exemption provides an exemption for "the sale . . . of lots in a subdivision containing fewer than one hundred lots which are not exempt under subsection (a) of this section[.]" *Id.* § 1702(b)(1). Importantly, a "subdivision" is defined as "any land which is . . . divided or is proposed to be divided into lots

6

. . . for the purpose of sale . . . as part of a common promotional plan[.]"  *Id.*
§ 1701(3).    The statute defines "common promotional plan" as "a plan,
undertaken by a single developer or a group of developers acting in concert, to
offer lots for sale or lease[.]"  *Id.* § 1701(4).  We read this language together to
provide for an exemption where, at the *time of sale*, the sold lots are part of land
"divided or is proposed to be divided into" fewer than 100 lots not exempt under
Section 1702(a) "for the purpose of sale . . . as part of . . ." "a plan undertaken by
a . . . developer."  *Id.* §§ 1702(b)(1), 1701(3), 1701(4).

    For example, if at the time of sale of a lot in a subdivision, the subdivision
as described to the purchaser is to contain 100 or more lots that are not yet
exempt under Section 1702(a), the developer may not take advantage of the 100-
lot exemption.  On the other hand, if at the time of sale of a lot in a subdivision,
the subdivision proposes to contain fewer than 100 lots that are not exempt
under Section 1702(a), the 100-lot exemption may be utilized.

    The parties do not dispute that at the time of sale of Plaintiffs' units, the
Beau View condominium development, as proposed and marketed across the
country, contained more than 100 units.    It is irrelevant whether the
development included four towers and 456 units or only 112 units in a single
tower – under either finding, Beau View would not qualify for the 100-lot
exemption.

    We find it significant that the text of Section 1702(b)(1) provides that the
100-lot exemption applies to subdivisions "*containing* fewer than one hundred
lots which *are* not exempt under subsection (a)[.]"  *Id.* § 1702(b)(1) (emphasis
added).  Congress's use of the present tense suggests that the lots claimed to be
exempt under subsection (a) must already be exempt at the time the developer
seeks to invoke the 100-lot exemption.

    We also look to the internal logic of ILSA.  In Section 1703(a)(2), lots
cannot be exempt under Section 1702(a)(2) unless the developer is under a

Nos. 10-60204, 10-60205, 10-60206, 10-60207

contract obligating it to erect a building within two years.  A contract cannot obligate a developer to complete a building within two years unless the contract exists.  A simple intent to enter into a binding contract is not enough to satisfy the exemption because intent does not obligate the developer to complete the building within two years.  The Guidelines even state that if the building is not complete, "the contract must obligate the seller to complete the building within two years[,]" and that "[i]f the contractual obligation is not present, the sale is not exempt."  61 Fed. Reg. 13,596-01, 13,598-99 (Mar. 27, 1996) (Guidelines Part IV(b)).  Therefore, a lot cannot be exempt under Section 1703(a)(2) without an existing contractual obligation, even under the Guidelines.[1]

Our interpretation is consistent with the reasoning of a recent decision from the Second Circuit.  *See Bodansky v. Fifth on Park Condo, LLC*, No. 10-270-CV, 2011 WL 891028 (2d Cir. Mar. 15, 2011).  A developer was held to have violated ILSA when it failed to provide the required disclosures before signing contracts for condominiums with the plaintiffs.  *Id.* at *1.  After analyzing the legislative history and the "unambiguous" text of ILSA, the court concluded, "ILSA's 100-lot exemption is determined as of the time of 'the sale . . .' of the lot." *Id.* at *7 (quoting 15 U.S.C. § 1702(b)(1)).

The court explained that ILSA does not suggest "purchasers must wait some unknown length of time – perhaps years – until they learn whether the lot they purchased was exempt . . . ."  *Id.* at *8.  For one, the two-year revocation right from the date of signing would be of little value if purchasers might have "to wait an indefinite length of time to learn whether they could revoke."  *Id.* Second, ILSA provides a three-year statute of limitations after the date of

---

[1] Today's decision is compatible with this court's earlier decision in *Law.  See Law*, 578 F.2d at 100.  In that case, we held that for purposes of determining compliance with ILSA, the focus is on the time of the purchaser's execution of a contract of purchase.  *Id.*  Like today's holding, if the required disclosures are not provided at that time, ILSA has been violated.  *Id.*

Nos. 10-60204, 10-60205, 10-60206, 10-60207

signing for claims related to purchasing a lot without proper disclosures. *Id.* This is in contrast to the three-year statute of limitations "'after discovery of the violation or after discovery should have been made by the exercise of reasonable diligence' for claims" unrelated to ILSA's disclosure requirements. *Id.* (quoting 15 U.S.C. § 1711(a)(2)).

The Second Circuit also contrasted ILSA's 12-month exemption, which exempts a purchased lot "if 12 or fewer lots in the subdivision 'are sold . . .' in a specified [12]-month period, and not more than 12 lots were 'sold . . .' in a previous [12]-month period." *Id.* at \*9 (quoting 15 U.S.C. § 1702(b)(2)). The court reasoned that though "the [12]-lot exemption exempts a purchased . . . lot based on sales . . . of other lots in the subdivision, Congress strictly limited the scope of the other relevant sales to a [12]-month period . . . [,] well within the 2-year revocation period under Section 1703(c)." *Id.* The 100-lot exemption, on the other hand, "contains neither this explicit limitation, nor does it explicitly depend on future sales . . . of other lots in the subdivision." *Id.*

The court concluded by looking to the federal Dictionary Act's mandate to consider statutory words used in the present tense as including the future, "'*unless the context indicates otherwise.*'" *Id.* at \*10 (quoting 1 U.S.C. § 1). Incorporating "the future tense into the 100-lot exemption . . . runs contrary to ILSA's revocation and statute of limitations provisions." *Id.*

The reasoning in *Bodansky* is consistent with our own.

For these reasons, Plaintiffs' condominium units at Beau View were not entitled to an ILSA exemption. Beau View violated ILSA because it did not provide the required disclosures.

REVERSED and REMANDED for further proceedings.