# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
August 15, 2025

Lyle W. Cayce
Clerk

No. 24-30550

John R. Stelly, II,

*Plaintiff—Appellant*,

*versus*

Department of Public Safety and Corrections Louisiana State, Office of State Police,

*Defendant—Appellee*.

_____

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:23-CV-772

_____

Before Higginson, Ho, and Wilson, *Circuit Judges*.

Stephen A. Higginson, *Circuit Judge*:

Plaintiff-Appellant John Stelly, a white man, sued Defendant-Appellee Department of Public Safety and Corrections Louisiana State, Office of State Police (LSP) for racial discrimination after he was passed over for a captain position 31 times. Stelly alleges that on at least two occasions, he was the most qualified applicant for a captaincy but was rejected because the LSP wished to hire a non-white individual for the captaincy instead. The district court found that Stelly's § 1981 claim was barred by a one-year statute of limitations, and that Stelly's Title VII claim failed because he had not rebutted

No. 24-30550

LSP's legitimate, nondiscriminatory rationale for its failure to promote Stelly. Because the district court's determinations were correct on the law and the record, we AFFIRM the dismissal of Stelly's claims.

## I.

The LSP uses a multi-step process to hire for its approximately 30 captain positions. Interested lieutenants must take an eligibility examination administered by the LSP Commission. Candidates scoring "in the top seven grade groups . . . move to the next phase of promotion"—an interview with a panel that includes the LSP's Superintendent and Deputy Superintendents. The Superintendent is the final decisionmaker and may make the final determination based on interview answers, recommendations, and other career factors.

Stelly began working for the LSP in 1995 as a trooper, and became a lieutenant in 2004. Stelly was assigned to Troop B, which works on traffic-related matters including highway patrol and accident investigations. Between 2008 and 2021, Stelly applied to captain positions 31 times but was not selected. Of the first 30 vacant captaincies for which Stelly applied, 22 positions went to white applicants while 8 went to non-white applicants.

Stelly brought suit based on two promotions of non-white lieutenants—Robert Burns II, an Asian-American man who became captain of the Operational Development Division (ODD), and Saleem El-Amin, a Black man who became captain of the Gaming Enforcement Division (GED). Both Burns and El-Amin had worked in their respective divisions prior to being promoted to captain; Stelly had not. Stelly alleges he was more qualified for the ODD and GED promotions because he had higher scores on the eligibility test and more time in grade as a lieutenant and trooper than Burns and El-Amin. In lieu of promotion, Stelly was offered other opportunities, including a transfer to LSP headquarters "so that he could gain experience in various

sections, and let the command staff and the senior command staff view and experience his work," and interview advice on how to present his candidacy more favorably.

Stelly instead retired and filed this action in the Eastern District of Louisiana, alleging Title VII and § 1981 violations, constructive discharge, and retaliation. After giving Stelly leave to file two amended complaints, the district court granted LSP's motion to dismiss under Rule 12(b)(6) as to the § 1981 claim, constructive discharge, and retaliation.[1] In particular, the district court found that the § 1981 claim was subject to a one-year statute of limitations because the promotion Stelly sought would have created a new relationship with LSP. At the conclusion of discovery, LSP moved for summary judgment on Stelly's Title VII failure to promote claim. The district court granted the motion, holding that Stelly had failed to rebut LSP's legitimate, nondiscriminatory rationale for its failure to promote Stelly. The district court found that "Stelly ha[d] produced no evidence indicating that LSP promoted Burns and El-Amin, not because it valued their significant prior experience in ODD and GED over Stelly's credentials, but because Stelly was white." Stelly appealed.

## II.

A grant of summary judgment is reviewed de novo. *Nickell v. Beau View of Biloxi, L.L.C.*, 636 F.3d 752, 754 (5th Cir. 2011). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "[W]here the non-movant bears the burden of proof at

---

[1] Stelly challenges the district court's determination that his § 1981 claim is untimely but does not appeal the dismissal of the constructive discharge and retaliation claims.

trial, the movant may merely point to an absence of evidence," which "shift[s] to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial." *Lindsey v. Sears Roebuck & Co.*, 16 F.3d 616, 618 (5th Cir. 1994). "The non-movant cannot satisfy this burden merely by denying the allegations in the opponent's pleadings but can do so by tendering depositions, affidavits, and other competent evidence to buttress its claim." *Donaghey v. Ocean Drilling & Expl. Co.*, 974 F.2d 646, 649 (5th Cir. 1992). "When assessing whether a dispute [of] any material fact exists, [courts] consider all of the evidence in the record but refrain from making credibility determinations or weighing the evidence." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007).

Under Title VII, it is "an unlawful employment practice for an employer . . . to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual′s race[.]" 42 U.S.C. § 2000e-2(a). On a motion for summary judgment on a Title VII discrimination claim, courts apply the *McDonnell-Douglas* burden-shifting framework. *Autry v. Fort Bend Indep. Sch. Dist.*, 704 F.3d 344, 346 (5th Cir. 2013) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05 (1973)). Under this framework, a plaintiff challenging a failure to promote must first establish a prima facie case demonstrating that "(1) he was not promoted, (2) he was qualified for the position he sought, (3) he fell within a protected class at the time of the failure to promote, and (4) the defendant either gave the promotion to someone outside of that protected class or otherwise failed to promote the plaintiff because of his race." *Autry*, 704 F.3d at 346–47 (citing *Price v. Fed. Express Corp.*, 283 F.3d 715, 720 (5th Cir. 2002)). Once the plaintiff makes out a prima facie case, the burden shifts "to the defendant to proffer a legitimate, nondiscriminatory reason for not promoting

the plaintiff." *Id*. at 347. If the defendant can establish such a reason, the burden shifts back to the plaintiff to demonstrate that the proffered nondiscriminatory reason is a mere pretext for discrimination or that the plaintiff's protected characteristic was another motivating factor for the action. *Vaughn v. Woodforest Bank*, 665 F.3d 632, 636 (5th Cir. 2011).

Although the district court rejected Stelly's argument that he had presented direct evidence of discrimination, it determined that "Stelly had sufficiently stated a prima facie case that LSP's failure to promote him on July 9, 2021 was racially motivated" based on the circumstantial evidence of "his assertions that he was not promoted to either of the captain positions for which he was qualified, and that individuals outside of his protected racial class were promoted instead." The burden then shifted to LSP to proffer a legitimate, nondiscriminatory reason for declining to promote Stelly. LSP asserted it had promoted Burns and El-Amin because they were better qualified for the specific captain positions in their respective divisions. "The promotion of a better qualified applicant is a legitimate and nondiscriminatory reason for preferring the successful applicant over the rejected employee who claims that the rejection was discriminatory." *Jefferies v. Harris Cnty. Cmty. Action Ass'n*, 693 F.2d 589, 590–91 (5th Cir. 1982). Stelly responded that he was more qualified than Burns or El-Amin because he had higher examination results, more education and training, better interpersonal skills, and more years in service.

The district court granted summary judgment on the basis that "Stelly has produced no evidence indicating that LSP promoted Burns and El-Amin, not because it valued their significant prior experience in ODD and GED over Stelly's credentials, but because Stelly was white." On appeal, Stelly focuses on steps two and three of the *McDonnell-Douglas* burden-shifting framework and argues that the district court failed to consider Stelly's relative

qualifications, statistical analysis, mixed-motive theory of discrimination and other evidence of pretext. We address each basis in turn.

## A.

Stelly argues that he has shown a genuine dispute of material fact as to whether Burns and El-Amin were less qualified than he was for their respective promotions.

As to Burns, Stelly claims that he scored higher in the promotional exam, had more time in grade, had a Master's degree and completed some work toward a Ph.D., had more specialized training, had more awards and commendations, and had a better disciplinary history. LSP responds that "Robert Burns was selected because he had worked for seven years and ten months in Operational Development – experience that Stelly, who spent most of his career in a patrol section, simply did not have."

The record reflects that LSP officials stated that the promotional exam score was used to determine who moved to the second phase of the process—distinct from the ultimate hiring determination. Although Stelly argues that "common sense implies that better test performance indicates better qualification," that is an objection to the hiring process itself, and not germane to a claim of discrimination. Stelly offers no evidence to suggest that LSP typically considers test performance in the second round of captain hiring and did not do so for Stelly. Indeed, Stelly claims "he was consistently scored the highest score on the promotional exams" for all 31 promotions—so at least 22 white officers with lower or equivalent scores were also promoted ahead of Stelly, supporting LSP's claim that the score is not a significant factor in the second stage of the promotion process.

Similarly, an LSP official testified that "state police is not a time and grade organization" (referring to both time in grade and examination scores), and thus Burns's number of years as a lieutenant was not the basis of LSP's

hiring decisions. Stelly does not offer evidence that LSP typically uses time in grade to evaluate captain promotions.

It is undisputed that Stelly had 7 awards while Burns had 5, and that Stelly had 12 commendations while Burns had 10. However, LSP conducts a holistic review of eleven different categories, only one of which looks at this type of praise, and Stelly offers no evidence that *number* of commendations and awards—which may correspond to the age of the candidate and time in grade—is the dispositive factor, or even a major factor, in hiring. He also provides, for example, no information on the number of awards or commendations of the average promoted candidate, or the candidate pool. Finally, Stelly points out that "Burns admitted in his deposition that Stelly is more qualified than he is in disciplinary actions," because Burns had previously received a 64-hour suspension. A member of the hiring board testified that he "was briefed by Internal Affairs on the discipline," but still found that Burns "was more suitable for this position."

LSP states that it hired Burns because he "had distinguished himself in working in [ODD] for seven years, at such a level that he was considered by many to be more of a higher rank" including by "legislators and other people in the industry." The testimony of multiple individuals involved in hiring makes clear that the most important criteria for filling the ODD position were experience in the field and ability to communicate. And the Superintendent who made the final hiring decision testified that "Lieutenant Stelly was not a good interviewer." Stelly's self-assessment that "he is a good communicator" is not evidence rebutting this decisionmaker testimony. "[W]e decline to substitute our judgment for the employer in evaluating what types of experience are most valuable for an employee in the new position in the absence of proof that the standards were not consistently applied or were so irrational or idiosyncratic as to suggest a cover-up." *EEOC v. La. Off. of Cmty. Servs.*,

47 F.3d 1438, 1445–46 (5th Cir. 1995). Stelly has provided no evidence of inconsistent application or irrational criteria.

The same holds true for Stelly's objections to the hiring of El-Amin. Stelly admits that both he and El-Amin had completed Master's degrees,[2] that El-Amin had no disciplinary record while Stelly had a letter of reprimand, and that El-Amin had served for eight years in the military.[3] Nevertheless, Stelly argues that his extra commendations and award, along with "co-author[ing] a leadership manual" made him better qualified for the GED captaincy.

Stelly raises an additional argument: that El-Amin was not the most qualified because other candidates for the captaincy had more experience in GED than El-Amin. But Stelly does not introduce evidence related to the race of these candidates with more experience in GED. And Stelly's own evidence shows that in many instances, white candidates for captain were promoted over other candidates with more time in that particular department. LSP further explains that upon holistic review of the candidates, El-Amin was distinguished by a recommendation from his superior officer in GED who stated El-Amin had "exceptional leadership demonstration[.]" Stelly does not claim that he had similar GED-specific recommendations. Instead he argues that "El-Amin must not have been as qualified for the Gaming position as LSP claims. If El-Amin was doing so well in Gaming why would [the Superintendent] transfer him out of that position less than a year after he was promoted into the position." This conclusory question about events taking

---

[2] Although Stelly describes himself as "working to [a] PhD," he says elsewhere that he had completed one semester of a Ph.D. in 1995 prior to joining the LSP and has not gone back.

[3] If we applied Stelly's arguments regarding Burns to the GED position, El-Amin would be more qualified than Stelly.

place a year *after* the promotional decision is not an argument for why El-Amin should not have been hired. And, even if the transfer might have been relevant, LSP provides a legitimate reason for the decision: El-Amin moved into an open captaincy position in Internal Affairs, for which he also had experience, because that vacancy was "critical," and El-Amin had "prior experience in Internal Affairs."

LSP has a burden "of production, not persuasion," and can meet that burden "by offering admissible evidence sufficient for the trier of fact to conclude that" the employer had a legitimate reason for its employment conduct. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000). "*McDonnell Douglas* is not a vehicle that permits a plaintiff to cast the burden of persuasion on the defendant and compel him to prove that his actions were nondiscriminatory." *Elliott v. Grp. Med. & Surgical Serv.*, 714 F.2d 556, 566 (5th Cir. 1983). LSP has satisfied its obligation to proffer legitimate reasons for its decision not to promote Stelly by providing specific reasons for hiring Burns and El-Amin related to the job duties of the specific positions, and by explaining with record evidence why Stelly was not hired. These "adequate, nondiscriminatory" reasons were sufficient to shift the burden back to Stelly. *Id.* But Stelly raises no dispute of fact as to whether LSP's existing, race-neutral policies were applied during the ODD and GED captain hiring processes; his objections to the hiring of Burns and El-Amin amount to his preferences about how the hiring process should be run.

## B.

Before the district court, Stelly proffered himself as a statistical expert and sought to enter his report on "the [u]se of [r]ace in the [p]romotions to [c]aptain by LSP." LSP moved to strike the report, but the district court did not discuss either the motion to strike or the statistical evidence in its summary judgment opinion. Stelly now re-urges his report before us, arguing that

the district court erred in rejecting his analysis. "With respect to expert testimony offered in the summary judgment context, the trial court has broad discretion to rule on the admissibility of the expert's evidence and its ruling must be sustained unless manifestly erroneous." *Boyd v. State Farm Ins.*, 158 F.3d 326, 331 (5th Cir. 1998). Significant issues with Stelly's analysis support the district court's decision not to consider the report.

Stelly analyzed captain promotion panels from September 2017 to October 2021. He used only panels with at least one non-white candidate and added up all the candidates across those panels, rather than considering each panel's individual composition. But Stelly does not justify his decision to aggregate hiring decisions across panels. It could be, for instance, that Black candidates were primarily promoted out of panels where they represented a majority of the candidates, in which case there would not be a disparity between their representation and promotion rate. Stelly also appears to have limited his parameters for analysis to avoid unfavorable but relevant data. He ended his consideration of data on October 4, 2021, and it is undisputed that between October 4, 2021, and the end of 2021, "an additional 11 candidates were promoted to captain positions, 10 of whom were white." Stelly omitted all data prior to 2017, and the record reflects that from 2008 to the portion of 2017 Stelly does not consider, Stelly unsuccessfully applied for 13 captain positions, 12 of which went to white applicants. These choices all favor Stelly's view, and undermine the reliability of his analysis.

"A court may infer that an employer engaged in racial discrimination when promoting workers if statistics, when comparing the number of nonwhites and whites promoted, demonstrate a gross statistical disparity." *Anderson v. Douglas & Lomason Co.*, 26 F.3d 1277, 1290 (5th Cir. 1994). But the statistics here only "establish a prima facie case of disparate treatment." *Id.* at 1285. An employer can rebut such a prima facie case "by introducing proof that plaintiffs' statistics are 'inaccurate or insignificant' or by providing a

'non-discriminatory explanation for the apparently discriminatory result.'" *Id.* (quoting *Bernard v. Gulf Oil Corp.*, 841 F.2d 547, 568 (5th Cir. 1988)). Even if Stelly's evidence were competent to be considered evidence of discrimination, it does not rebut LSP's legitimate explanation for its hiring decisions. The district court did not err in not considering this evidence when determining whether Stelly showed pretext.

## C.

A Title VII plaintiff can establish unlawful employment discrimination under a mixed-motive theory. *Cf. Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 310 (5th Cir. 2004) (analyzing ADEA claims). "The mixed-motive analysis is conducted using a 'modified *McDonnell Douglas*' test, under which, after a defendant has offered nondiscriminatory reasons for the adverse employment action, a plaintiff must offer sufficient evidence to create a genuine issue of material fact that the defendant's reason, while true, is only one of the reasons for its conduct and that another motivating factor was the plaintiff's protected characteristic." *Turner*, 476 F.3d at 347.

Stelly argues that the district court applied the wrong standard for summary judgment by not mentioning mixed motives. But, as Stelly acknowledged in his briefing before the district court, the mixed motive standard is typically important insofar as it determines the jury instructions. The district court did not have to mention "mixed motive" because it ruled out any application of the standard when it indicated that "Stelly has produced *no* evidence indicating that LSP promoted Burns and El-Amin . . . because Stelly was white." A mixed motive analysis requires *some* showing that the protected characteristic was at least partially a motivating factor—the district court's determination that there was no evidence at all showing race was a factor impliedly finds that this is not a mixed motive case. Stelly's disagreements amount to the same bases raised above—his relative qualifications and

statistical evidence, neither of which is sufficient evidence of racial or mixed motive discrimination.

## D.

Stelly raises several other conclusory arguments to show pretext. First, he claims the district court improperly omitted language in *Bryant v. Compass Grp. USA Inc.*, 413 F.3d 471, 478 (5th Cir. 2005), which holds that "[m]anagement does not have to make proper decisions, only non-discriminatory ones." He does not explain how this improves his position, other than stating that "LSP made discriminatory decisions when it failed to promote Stelly." And the district court did not hold that an employer can make discriminatory decisions; it instead held that Stelly had not shown that LSP made discriminatory decisions.

Second, Stelly argues it was "error for the [d]istrict [c]ourt to instruct . . . that petitioner could carry [his] burden of persuasion only by showing that [he] was in fact better qualified than the [non-white] applicant who got the job." *See Patterson v. McLean Credit Union*, 491 U.S. 164, 188 (1989), *superseded by statute as recognized in CBOCS W., Inc. v. Humphries*, 553 U.S. 442, 451 (2008). But he does not explain how the district court "limit[ed] the evidence" to whether Stelly was better qualified by pointing to evidence that the district court failed to consider.

Third, Stelly cites to *Laxton v. Gap Inc.*, 333 F.3d 572, 582 (5th Cir. 2003), to claim that "[t]he strength of Stelly's prima facie case" can show that LSP's justifications are pretextual. But he only re-urges the same arguments to show this supposed "strength": that he had a high score on his promotional exams. In *Laxton*, there was "evidence demonstrating . . . falsity" of the proffered explanation and "other evidence that undermine[d] the overall credibility" of that explanation. 333 F.3d at 580. Thus, the defendant's "justification becomes even less credible when viewed in light of the

strength of Laxton's prima facie case." *Id.* at 582. Laxton's prima facie case alone did not rebut the employer's nondiscriminatory explanation. Here, Stelly has not shown falsity, credibility issues, or any other evidence of pretext, while LSP has credibly explained that score on promotional exams does not factor into the ultimate captain hiring decision.

Finally, Stelly offers as evidence of pretext the declaration of an observer of one of Stelly's hiring panels, Major Saizan, who testified he "was very impressed with [Stelly's] presentation. He was very articulate, knowledgeable about the position, and professional . . . [he] did exceptionally well in this interview." Major Saizan stated that he "do[es] not remember being as impressed with" the Black man who ultimately received the Technology and Business Support captaincy. Saizan was not a decisionmaker in Stelly's hiring, and thus his personal ranking of the candidates is not particularly probative, as he has no insight into the hiring panel's perceptions. Although Stelly lost the Technology and Business Support promotion to a Black man in 2018 when Saizan observed his interview, he lost that same promotion to a white man in 2020, even though there were other non-white individuals eligible for that promotion. This favors LSP's proffered justification—that Stelly was simply not as qualified for the position as other candidates. Saizan's declaration does not constitute evidence of pretext, and certainly not in the separate hiring panels for Burns and El-Amin.

Because Stelly has failed to rebut LSP's legitimate, nondiscriminatory reason for failing to promote him, LSP is entitled to summary judgment on Stelly's Title VII claim.

## III.

Stelly also appeals the district court's dismissal of his 42 U.S.C. § 1981 claims. "Dismissals for failure to state a claim are reviewed de novo." *Cody v. Allstate Fire & Cas. Ins.*, 19 F.4th 712, 714 (5th Cir. 2021). At this stage in

the proceedings, we "accept all well-pleaded facts as true, drawing all reasonable inferences in the nonmoving party's favor." *Mayfield v. Currie*, 976 F.3d 482, 485 (5th Cir. 2020) (quoting *Benfield v. Magee*, 945 F.3d 333, 336 (5th Cir. 2019)). Dismissal is appropriate if a plaintiff fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Section 1981 does not contain a limitation period, but 28 U.S.C. § 1658 provides a four-year statute of limitations for statutes that do not include their own limitation period and that "aris[e] under an Act of Congress enacted after [December 1, 1990]." Section 1981 was originally enacted as part of the Civil Rights Act of 1866, and was interpreted by the Supreme Court to protect only discriminatory conduct in the *formation* of a contract, not post-contract discrimination. In 1991, after the enactment of § 1658, Congress amended § 1981 to include the "termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b). The Supreme Court held that claims arising under the 1991 amendment to § 1981 were subject to the four-year statute of limitations, but that "the most appropriate or analogous state statute of limitations" applies to claims which could have been brought under Section 1981 prior to December 1, 1990. *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 371 (2004) (quoting *Goodman v. Lukens Steel Co.*, 482 U.S. 656, 660, (1987)). This court has assumed that "Louisiana's one-year prescriptive period for tort" and personal injury actions applies to such § 1981 actions. *Johnson v. Crown Enters., Inc.*, 398 F.3d 339, 341 (5th Cir. 2005).

The question, then, is whether an action for failure to promote could have been brought prior to the 1991 amendments of § 1981. In 1989, the

Supreme Court explained that "whether a promotion claim is actionable under § 1981 depends upon whether the nature of the change in position was such that it involved the opportunity to enter into a new contract with the employer. If so, then the employer's refusal to enter the new contract is actionable[.]" *Patterson*, 491 U.S. at 185. The new position which the plaintiff is denied must provide "an opportunity for a new and distinct relation between the employee and the employer[.]" *Id.* "In deciding whether a change of position rises to the level of a new and distinct relation, the court must compare the employee's current duties, salary, and benefits with those incident to the new position" and determine whether "the new position involves substantial changes[.]" *Police Ass'n of New Orleans ex rel. Cannatella v. City of New Orleans*, 100 F.3d 1159, 1170–71 (5th Cir. 1996).

Stelly argues that the promotion he sought "did not involve the formation of a new contract or a new relationship with his employer[.]" He claims that the lieutenant and captain positions are similar because "the same policies and procedures" apply, they are both "governed by the Louisiana State Police Commission," they "supervise about the same number of people," and "the LSP makes all of its promotions internally[.]" LSP responds that Stelly would have moved from "Troop B, where he was a subordinate, to a captain position in" multiple departments and troops outside of Troop B. Any of these specialized departments, including Public Affairs, Internal Affairs, ODD, or GED, would involve a substantial change in role and responsibility. Stelly's Second Amended Complaint includes his lieutenant evaluation which looks prospectively to a time when Stelly will be "given the opportunity to run a command," implying a delineation of job duties between lieutenant and captain. The same complaint also states that Stelly was harmed because he "planned to retire after at least three years as a captain for retirement pay calculations[,]" an admission that the benefits were

distinct. And before the district court, "Stelly concede[d] his compensation would have substantially changed as captain."

The district court determined that given the change in department, compensation, and salary, the new positions were a "substantial[] change[]" from Stelly's position as a Troop B lieutenant. The fact that Stelly would have remained in the same institution and been governed by the same policies and procedures does not overcome these changes. *See Police Ass'n of New Orleans*, 100 F.3d at 1171 (internal promotion from officer to sergeant in the New Orleans Police Department constituted a substantial change for the purposes of § 1981). The pleadings show that a promotion to captain would have initiated "a new and distinct relation" between Stelly and DPS, and thus Stelly's § 1981 claim could have been brought prior to December 1, 1990. *See also Hill v. Cleco Corp.*, 541 F. App'x 343, 345 (5th Cir. 2013) (per curiam) (promotion from Senior Systems Analyst to General Manager was subject to a one-year statute of limitations, because the new position increased supervisory authority and pay); *Bardell v. Jefferson Par. Sch. Bd.*, 2024 WL 3408621, at *2 (5th Cir. July 15, 2024) (per curiam) (because promotion from teacher to administrator required extra qualifications and received extra pay and responsibilities, claim was subject to the one-year statute of limitations).

The district court correctly applied the one-year limitations period from Louisiana state law in dismissing Stelly's § 1981 claim as time-barred.

\* \* \*

For the foregoing reasons, we AFFIRM summary judgment on the Title VII claim because Stelly has presented no evidence of racial discrimination to survive summary judgment, and AFFIRM the dismissal of the § 1981 claim because the limitations period on Stelly's § 1981 claim has run.