# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

June 1, 2026

Lyle W. Cayce
Clerk

———————

No. 25-30463

———————

DAWN SIMMONS; RAY SIMMONS; BETHANY DARBY, *Individually & on Behalf of her Minor Child*, M D; BERNARD DARBY, JR., *Individually & on Behalf of his minor child*, M D,

*Plaintiffs—Appellants*,

*versus*

BROTHERHOOD MUTUAL INSURANCE COMPANY,

*Defendant—Appellee*,

———————————————————————

BETHANY DARBY, *Individually & on Behalf of Her Minor Child*, M D; BERNARD DARBY, JR. *Individually & on Behalf of His Minor Child*, M D,

*Plaintiffs—Appellants*,

*versus*

BROTHERHOOD MUTUAL INSURANCE COMPANY,

*Defendant—Appellee*.

———————————————————

Appeal from the United States District Court
for the Western District of Louisiana
USDC Nos. 6:23-CV-58, 6:23-CV-60

———————————————————

Before ELROD, *Chief Judge*, and WILLETT and WILSON, *Circuit Judges*.

PER CURIAM:[*]

At the heart of this insurance dispute lies a tragedy.  Dawn Simmons, her three children, and a family friend were traveling home from Dawn's high-school son's basketball game when a drunk driver traveling on the wrong side of the highway crashed into the Simmonses' car, killing all three Simmons children as well as the other driver.  Dawn and the family friend, Marissa Darby, sustained injuries.  The Simmonses and Marissa's parents sued the children's private school's auto insurer, Brotherhood Mutual Insurance Company.  The district court granted summary judgment for Brotherhood, concluding that Brotherhood's policy with the school did not cover the plaintiffs.  Because the district court correctly concluded that the policy does not apply, we AFFIRM.

I

Christopher Simmons played basketball for his high school, Acadiana Christian School, in New Iberia, Louisiana.  On December 17, 2021, the school basketball team was scheduled to play a game out of town in Monroe.  On December 14, a few days before the game, the school sent the following e-mail to the parents of the students on the basketball team:

> Good afternoon Basketball parents,
>
> We are organizing rides to the basketball game in Monroe on Dec 17th.  We will not be taking the bus to the game.  Please let me know if your child will be riding with you or if they will need

---

[*] This opinion is not designated for publication. *See* 5TH CIR. R. 47.5.

a ride.  If you are planning on driving, please let me know if you could bring another basketball player.

The JV game starts at 5:30 pm and we would like JV and Varsity to be there by 4:45 pm.  We will be leaving around 12:30 pm.  The address to the gym is [address].

If you can drive another student, you will need to bring a copy of your license and insurance and get pre-approved.

Thanks,

Admin.

Christopher's older sister, Lindy, drove Christopher back from the game in the Simmons family car.  Lindy and Christopher's mother, Dawn; their younger sister, Kamryn; and family friend Marissa Darby rode along.

On their way back from the game, another car collided with the Simmonses'.  Sadly, the accident caused Lindy's, Christopher's, and Kamryn's deaths, as well as that of the other car's driver, John Lundy.  Dawn and Marissa sustained injuries.

In Louisiana state court, Dawn and her husband sued the school's underinsured/uninsured motorist insurer, Brotherhood, as well as Lundy's estate, his motorist insurer, and the Simmonses' motorist insurer. Marissa's parents filed a substantively identical lawsuit.  The defendants removed both cases to federal court on the basis of diversity jurisdiction, *see* 28 U.S.C. § 1332(a), and the district court consolidated the cases. The other insurers and Lundy's estate were dismissed after settling with the plaintiffs or tendering their policy limits.

Both sides moved for partial summary judgment.  Brotherhood filed three motions on three different issues, including, as relevant here, coverage

under its commercial multi-peril policy. That policy applies if the event causing bodily injury "arise[s] out of the operation, [or] use . . . of a nonowned vehicle . . . by an authorized operator." The plaintiffs likewise moved for partial summary judgment on this question.

The district court concluded that the commercial multi-peril policy did not provide coverage. Among other things, it determined that the school's December 14 e-mail "does not reflect a broad request to all parents of basketball players to drive players to the game in Monroe; rather, the e-mail inquired as to whether those parents who were traveling with their child to the game could provide transportation to those players who had no ride." The district court thus granted partial summary judgment for Brotherhood and denied the plaintiffs' summary-judgment motion on the same issue.

The plaintiffs timely appealed. *See* Fed. R. App. P. 4(a)(1)(A). We remanded the case on a limited basis for the district court to enter final judgment. *Simmons v. Bhd. Mut. Ins. Co.*, No. 25-30463, 2026 WL 1365079 (5th Cir. May 15, 2026); *see Trent v. Wade*, 776 F.3d 368, 387 (5th Cir. 2015) (examining the basis of our appellate jurisdiction *sua sponte* (citing *Mosley v. Cozby*, 813 F.2d 659, 660 (5th Cir. 1987))). Now satisfied of our jurisdiction to hear this appeal, *see Trent*, 776 F.3d at 387, we proceed to the issues that the parties have presented.

## II

The plaintiffs maintain that the district court should not have granted summary judgment for Brotherhood. We review summary judgments *de novo*, applying the same standard as the district court. *E.g.*, *Nickell v. Beau View of Biloxi, L.L.C.*, 636 F.3d 752, 754 (5th Cir. 2011) (quoting *Addicks Servs., Inc. v. GGP–Bridgeland, LP*, 596 F.3d 286, 293 (5th Cir. 2010)). Summary judgment is appropriate "if the movant shows that there is no

genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a). "Because this case is before the court on cross motions for summary judgment," we "review the district court's rulings de novo and construe all evidence and inferences in favor of the non-moving parties." *Evanston Ins. Co. v. Mid-Continent Cas. Co.*, 909 F.3d 143, 146 (5th Cir. 2018) (citing *LCS Corr. Servs., Inc. v. Lexington Ins. Co.*, 800 F.3d 664, 669 (5th Cir. 2015)). "When, as here, cross-motions for summary judgment have been ruled upon, we examine 'each party's motion independently.'" *Balfour Beatty Constr., L.L.C. v. Liberty Mut. Fire Ins. Co.*, 968 F.3d 504, 509 (5th Cir. 2020) (quoting *Springboards To Educ., Inc. v. Hous. Indep. Sch. Dist.*, 912 F.3d 805, 811 (5th Cir. 2019)).

Brotherhood removed this case from Louisiana state court on the basis of diversity jurisdiction, so Louisiana law applies. *E.g.*, *Cates v. Sears, Roebuck & Co.*, 928 F.2d 679, 687 (5th Cir. 1991). In Louisiana, "[a]n insurance policy is a contract between the parties and should be construed by using the general rules of interpretation of contracts set forth in the Louisiana Civil Code." *Cadwallader v. Allstate Ins. Co.*, 02-1637, p. 3 (La. 6/27/03), 848 So. 2d 577, 580. "According to those rules, the responsibility of the judiciary in interpreting insurance contracts is to determine the parties' common intent"—an endeavor that we begin by "examining the words of the insurance contract itself." *Sims v. Mulhearn Funeral Home, Inc.*, 07-0054, p. 7 (La. 5/22/07), 956 So. 2d 583, 589 (citing, among other things, La. Civ. Code Ann. arts. 2045–46). "[W]ords and phrases in an insurance policy are to be construed using their plain, ordinary[,] and generally prevailing meaning, unless the words have acquired a technical meaning, in which case the words must be ascribed their technical meaning." *Id.* (citing, among other things, La. Civ. Code Ann. art. 2047). "Every insurance contract shall be construed according to the entirety of its terms and conditions as set forth in the policy, and as amplified, extended, or modified by any rider,

endorsement, or application attached to or made a part of the policy." La. Stat. Ann. 22:881. "When determining whether or not a policy affords coverage for an incident, it is the burden of the insured to prove [that] the incident falls within the policy's terms." *Doerr v. Mobil Oil Corp.*, 00-0947, p. 5 (La. 12/19/00), 774 So. 2d 119, 124 (citation omitted).

Under ACS's insurance policy with Brotherhood, coverage applies if "the operation, use, loading, or unloading of a nonowned vehicle" out of which the "event or events causing the bodily injury or property damage" arose was "by an authorized operator." The parties dispute only whether an "authorized operator" was operating or using the Simmons family car (which everyone agrees qualifies as a "nonowned vehicle") at the time of the accident. The policy defines "authorized operator" as follows, with "you" or "your" referring to the school as policyholder:

> a. Your leader or your employee, but only while operating or using a nonowned vehicle on your behalf and for the benefit of your organization; and
>
> b. Any other person, but only while such person is operating or using a nonowned vehicle at the request of your leader, your employee, or your appointed person, and only if operated:
>> 1) on your behalf and for the benefit of your organization . . . .

No one in the Simmonses' car was an ACS "leader" or "employee," so an authorized operator was "operating or using" that car at the time of the accident only if doing so "at the request of [ACS's] leader, . . . employee, or . . . appointed person," and only "on [ACS's] behalf and for [its] benefit." Brotherhood does not dispute that Lindy's taking Christopher to the game could qualify as "some benefit to ACS."

But no one in the Simmonses' car was "operating or using" the vehicle at ACS's request—because ACS made no such request for "operati[on] or us[e]" by school families. The plaintiffs insist that ACS requested that parents drive their children to the December 17 game in the e-mail from December 14. Because the policy does not define the word "request" or what it means to do something at someone's request, we interpret this policy language according to its ordinary meaning. *E.g.*, La. Civ. Code Ann. art. 2047; *Sims*, 956 So. 2d at 589. To do something at a person's request means to do it "in response to a person's expressed wish." *Request*, Oxford English Dictionary (rev. 2010), https://doi.org/10.1093/OED/9830475328; *see also id.* ("[a]n instance of asking for something, esp[ecially] in a polite or formal manner; a petition or expression of wish; a document expressing such a wish; (also) the thing which is asked for"; or "action, on the part of a specified person, of asking for some favour, service, etc., from another, the expression of one's desire or wish directly addressed to the person or persons able to gratify it"); *Request*, Merriam-Webster, https://www.merriam-webster.com/dictionary/request (last visited June 1, 2026) ("the act or an instance of asking for something" or "something asked for").

The e-mail at issue did not ask parents to drive their own children to the game. Again, that e-mail's full text says:

> Good afternoon Basketball parents,
>
> We are organizing rides to the basketball game in Monroe on Dec 17th. We will not be taking the bus to the game. Please let me know if your child will be riding with you or if they will need a ride. If you are planning on driving, please let me know if you could bring another basketball player.

> The JV game starts at 5:30 pm and we would like JV and Varsity to be there by 4:45 pm. We will be leaving around 12:30 pm. The address to the gym is [address].
>
> If you can drive another student, you will need to bring a copy of your license and insurance and get pre-approved.
>
> Thanks,
>
> Admin.

We agree with the district court that this e-mail did not ask parents to drive their own children to the game. It asked parents to inform the school if a parent's own child would ride with the parent. It also offers the option for a player to ride with other parents (should those parents receive pre-approval). But it does not ask parents to drive their own children. And it certainly does not ask anyone other than a parent to drive a player, as the e-mail addresses itself to "[b]asketball parents." Because the school made no request for parents to drive their own children, even if Dawn and Lindy were "operating or using" the Simmons family car for ACS's benefit, they did not do so "at [ACS's] request," and thus do not qualify for coverage under the policy.[1]

---

[1] The plaintiffs maintain that the district court improperly excluded from evidence a text message that Christopher sent to Dawn a week before the tragic accident. In the plaintiffs' view, this text shows a school request. We disagree. Even if the information that the text contains were in admissible form, *see, e.g.*, *In re Deepwater Horizon*, 48 F.4th 378, 385 (5th Cir. 2021) ("[T]he evidence offered for summary judgment purposes need not yet be in a form admissible at trial, but the party offering the evidence needs to be able to demonstrate that it can be put into an admissible form by the time of a trial."), the text does not show school-requested operation or use.

No. 25-30463

We therefore AFFIRM the district court's summary judgment in Brotherhood's favor.